317 P.3d 27

**KILAKILA 'O HALEAKALA, Petitioner/Appellant– Appellant,**

v.

**BOARD OF LAND AND NATURAL RESOURCES, the Department of Land and Natural Resources, and William Aila, in his Official Capacity as Chairperson of the Board of Land and Natural Resources, University of Hawaii, and Thomas M. Apple, in his Official Capacity as Chancellor of the University of Hawai'i at Manoa, Respondents/Appellees–Appellees.**

No. SCWC–11–0000353.

Supreme Court of Hawai'i.

Dec. 13, 2013.

David Kimo Frankel (Sharla Ann Manley and Camille Kaimālie Kalama with him on the briefs), Honolulu, for petitioner.

Linda L.W. Chow (Donna H. Kalama, Honolulu, and Julie H. China with her on the briefs), for respondents Board of Land and Natural Resources, Department of Land and Natural Resources, and William Aila, in his official capacity as Chairperson of the Board of Land and Natural Resources Lisa Woods Munger (Bruce Y. Matsui, Randall K. Ishikawa, Lisa A. Bail and Adam K. Robinson with her on the briefs), for respondents University of Hawai'i and Thomas M. Apple, in his official capacity as Chancellor of the University of Hawai'i at Mānoa.

RECKTENWALD, C.J., NAKAYAMA, McKENNA, and POLLACK, JJ., with ACOBA, J., concurring separately, with whom POLLACK, J., joins.

Opinion of the Court by NAKAYAMA, J.

It is well established that under Hawai'i Revised Statutes (HRS) § 91–14(a), "[a]ny person aggrieved by a final decision and order in a contested case ... is entitled to judicial review thereof under this chapter[.]" In *Kaleikini v. Thielen*, 124 Hawai'i 1, 26, 237 P.3d 1067, 1092 (2010), this court most recently reaffirmed the principle that a denial of a request for a contested case hearing (or a request to intervene and participate in one) also constitutes a "final decision and order" of an administrative agency from which the aggrieved party may appeal pursuant to HRS § 91–14. In this case, we must consider whether a circuit court has jurisdiction over an HRS § 91–14 appeal when an agency makes a final decision on a given matter—in this case, an application for a conservation district use permit—without either granting or denying an interested party's request for a contested case hearing on the matter.

This case concerns a proposed project of Respondent/Appellee–Appellee University of Hawai'i (UH) to construct an advanced solar telescope, observatory, and associated facilities near the summit of Haleakalā on Maui. Petitioner/Appellant–Appellant Kilakila 'O Haleakalā (KOH), "an organization dedicated to the protection of the sacredness of the summit of Haleakalā[,]" opposed UH's conservation district use application (CDUA or application) to Respondent/Appellee–Appellee Department of Land and Natural Resources (DLNR or the department) for a conservation district use permit (CDUP or permit) to build on the project site. KOH also requested and formally petitioned DLNR for a contested case hearing on the application in order for Respondent/Appellee–Appellee Board of Land and Natural Resources (BLNR or the board) to make a decision on the application after having considered evidence on the record, including ex-

hibits and witness testimony. Without either granting or denying KOH's petition, BLNR considered UH's application as an agenda item at a regularly scheduled public board meeting and proceeded to vote to grant the permit. KOH orally renewed its request for a contested case hearing immediately after the vote and submitted another formal written petition the next day. KOH also filed an agency appeal in the Circuit Court of the First Circuit[1] seeking remand to BLNR for a contested case hearing, a stay of the permit, and reversal of the permit. The circuit court dismissed the agency appeal for lack of jurisdiction because there had been no contested case hearing. The circuit court also concluded that KOH's appeal was mooted by the fact that BLNR had subsequently granted KOH's request for a contested case hearing subject to a preliminary hearing on KOH's standing. KOH appealed the circuit court's decision to the ICA, and the ICA affirmed on the ground that, under HRS § 91–14, the circuit court did not have jurisdiction because no contested case hearing had been held.

Now before this court, KOH maintains that BLNR's decision to grant the permit was "a final decision and order in a contested case" pursuant to HRS § 91–14; as a result, a separate contested case hearing was not required for it to appeal and for the circuit court to have jurisdiction over the appeal pursuant to HRS § 91–14. Although BLNR did grant KOH's request for a contested case hearing subsequent to the board meeting at which it issued the permit, BLNR has not ever stayed or vacated the permit. Thus, KOH's position is that it may still seek those remedies and therefore that this appeal is not moot. Based on the discussion herein, we agree that the case is not moot, that a contested case hearing should have been held prior to the vote, and that the circuit court erred in dismissing KOH's appeal. Because BLNR voted to grant the permit without having held a contested case hearing as requested by KOH prior to taking that vote, BLNR effectively rendered a final decision and order within the meaning of HRS § 91–

14, and KOH at that point had the right to appeal to circuit court.

## I. BACKGROUND

### A. Factual and Procedural Background

On March 10, 2010, UH submitted an application to DLNR for its Advanced Technology Solar Telescope (ATST or telescope) project at Haleakalā on the island of Maui. The telescope project "involves the construction, installation and operation of a solar telescope and associated infrastructure near the summit of Haleakalā." KOH, which "is an organization dedicated to the protection of the sacredness of the summit of Haleakalā[,]" submitted a written petition to DLNR on May 24, 2010 for a contested case hearing on the application. "On June 10, 2010, Sam Lemmo of DLNR rejected the petition for a contested case hearing, stating that a hearing was not required by law[.]" Subsequently, on July 8, 2010, KOH "re-submitted its petition for a contested case hearing on the ATST project because Mr. Lemmo did not have authority to reject the petition." DLNR did not take any action on the July 8 resubmission. On August 26, 2010, DLNR held a public hearing on the application in Pukalani, Maui, KOH "testified in opposition to the project, citing its impacts on resources in the conservation district, and orally requested a contested case hearing." DLNR persisted in taking no action on KOH's requests for a contested case hearing.

On November 22, 2010, at a regularly scheduled board meeting, BLNR considered UH's application for the telescope project but deferred any decisions on the application until the next scheduled meeting. At the next regularly scheduled board meeting on December 1, 2010, BLNR again considered UH's application; at that meeting, BLNR voted to grant the application and thereafter issued a permit to UH. Immediately after the vote, KOH, through counsel, again orally requested a contested case hearing. The next day, December 2, 2010, KOH again submitted a written petition for a contested case

---

1. The Honorable Rhonda A. Nishimura presided.

hearing pursuant to Hawai‘i Administrative Rules (HAR) § 13–1–29.[2]

On December 13, 2010, KOH filed an appeal in circuit court, pursuant to HRS § 91–14,[3] "from the final decision of BLNR on December 1, 2010(1) effectively denying the timely request of [KOH] for a contested case hearing and (2) granting [UH]'s conservation district use application (CDUA MA 3542)."[4] In its statement of the case filed with the notice of appeal, KOH indicated that it was asking the circuit court to:

A.   Remand the case with instructions to the Chairperson, BLNR and DLNR to:

(i) properly apply the criteria set forth in HAR § 13–5–30;

(ii) provide [KOH] with a contested case hearing with all the procedural protections provided in HAR §§ 13–1–28[to] 13–1–39 and HRS § [§ ] 91–9[to] 91–13.

B.   Stay the decision granting the conservation district use permit.

C.   Reverse the decision granting the conservation district use permit.

On January 4, 2011, UH filed a motion to dismiss KOH's notice of appeal in the circuit court.   In support of the motion, UH argued that the appeal had to be dismissed for lack of jurisdiction and on ripeness grounds because no contested case hearing had been held, and further that KOH's request for such a hearing had not yet been decided.   On January 11, 2011, BLNR filed a joinder to UH's motion to dismiss.

In its February 10, 2011 memorandum in opposition to the motion to dismiss, KOH argued that Hawai‘i case law does not require a formal contested case hearing as a necessary condition precedent to a chapter 91 appeal when the appellant has done all it can to participate in the agency proceedings and preserve its right to appeal; accordingly, in this case, KOH argued that the circuit court had jurisdiction to determine whether the permit was properly granted even in the absence of a formal contested case hearing. KOH therefore argued that the appeal was ripe because even without a formal contested case hearing, BLNR's decision to grant the permit at the December 1, 2010 meeting constituted final agency action that was therefore appealable.   KOH further argued

2.   HAR § 13–1–29 provides, in pertinent part:
    (a) ... An oral or written request for a contested case hearing must be made to the board no later than the close of the board meeting at which the subject matter of the request is scheduled for board disposition.   An agency or person so requesting a contested case must also file [a] written petition with the board for a contested case no later than ten calendar days after the close of the board meeting at which the matter was scheduled for disposition.

3.   HRS § 91–14 (Supp.2010) provided then, as it does now:
    (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]
    ....
    (b) Except as otherwise provided herein, proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling or within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court, except where a statute provides for a direct appeal to the intermediate appellate court, subject to chapter 602.
    ....

(c) The proceedings for review shall not stay enforcement of the agency decisions or the confirmation of any fine as a judgment pursuant to section 92–17(g); but the reviewing court may order a stay if the following criteria have been met:
(1) There is likelihood that the subject person will prevail on the merits of an appeal from the administrative proceeding to the court;
(2) Irreparable damage to the subject person will result if a stay is not ordered;
(3) No irreparable damage to the public will result from the stay order; and
(4) Public interest will be served by the stay order.
....

4.   On November 22, 2010, KOH also filed an original complaint in circuit court seeking declaratory relief.   On January 11, 2011, KOH filed a motion to consolidate the declaratory action with the agency appeal.   On February 7, 2011, a hearing on the motion to consolidate was held before the Honorable Virginia L. Crandall; Judge Crandall took the motion under submission pending Judge Nishimura's ruling on UH's motion to dismiss the agency appeal.   Because the motion to dismiss was granted, the motion to consolidate was denied as moot.

that BLNR's granting of the permit had the mark of finality because once granted, a permit can only be revoked if BLNR is ordered to do so by a court or if the permit applicant fails to comply with a condition of the permit. KOH also noted that a contested case hearing on a matter, when such a hearing is required, must take place before an agency's decision on that matter; in this case, therefore, "[t]he granting of a permit to develop in the face of a [pending] request for a contested case hearing effectively denies the request for the hearing." Furthermore, as KOH argued, "[n]othing in BLNR's rules would allow it to: first, grant a conservation district use permit; second, conduct a formal contested case hearing; and then revoke the conservation district use permit if the party challenging the conservation district use application prevailed."

Meanwhile, on February 11, 2011, BLNR granted KOH's request for a contested case hearing and authorized the appointment of a hearing officer to conduct all hearings regarding UH's application, subject to a preliminary hearing to determine whether KOH had standing to participate in a contested case hearing. On February 15, 2011, UH replied to KOH's memo in opposition, arguing that KOH's appeal was now moot because BLNR's February 11 grant of KOH's contested case hearing request afforded KOH the relief it was seeking from the circuit court.

On February 18, 2011, the circuit court held a hearing on the motion to dismiss. Before ruling, the court expressed concerns regarding the implementation of the permit in light of the pending contested case hearing. BLNR's counsel asserted that the contested case hearing would be the appropriate venue for pursuing a possible stay of the permit. The circuit court then granted the motion to dismiss, but it encouraged BLNR to stay the permit until the contested case hearing concluded. KOH timely appealed to the ICA.

## B. The ICA's June 28, 2012 Memorandum Opinion

On appeal to the ICA, KOH raised one general point of error: that the circuit court erred in dismissing its agency appeal for lack of jurisdiction. In support of that point of error, KOH argued, adhering to its position in circuit court, that a party can appeal pursuant to HRS chapter 91 even when a formal contested case hearing has not been held, and that the circuit court had jurisdiction to rule on whether BLNR properly granted the permit even in the absence of a formal contested case hearing; that the case was ripe and not moot; that KOH had exhausted the administrative remedies that were available to it; and that BLNR could not grant a permit before holding a contested case hearing.

In response, UH argued that the circuit court did lack jurisdiction because KOH was not a "person aggrieved by a final decision and order in a contested case" pursuant to HRS § 91–14. Specifically, UH noted that "[a]mong its prerequisites, [HRS § 91–14(a)] requires that a contested case must have occurred <u>before</u> appellate jurisdiction may be exercised." UH also argued that the agency appeal was moot because a contested case hearing was in fact granted. Similarly, UH argued that the appeal was not ripe because at the time of its filing, no contested case hearing had been held; moreover, because a contested case hearing <u>had</u> been granted, the appeal would remain unripe until BLNR issued a final decision and order from which KOH could then appeal.

In a memorandum opinion, the ICA affirmed the final judgment of the circuit court dismissing KOH's agency appeal for lack of jurisdiction. The ICA's brief analysis focused on the following passage explaining the requirements that an appellant must meet in an HRS § 91–14 appeal from an agency to the circuit court:

first, the proceeding that resulted in the unfavorable agency action <u>must have been a contested case hearing—i.e., a hearing that was (1) required by law and (2) determined the rights, duties, and privileges of specific parties;</u> second, the agency's action must represent a final decision and order, or a preliminary ruling such that deferral of review would deprive the claimant of adequate relief; third, the claimant must have followed the applicable agency

rules and, therefore, have been involved in the contested case; and finally, the claimant's legal interests must have been injured—i.e., the claimant must have standing to appeal.

*Kilakila 'O Haleakalā v. Bd. of Land & Natural Res.*, No. CAAP–11–0000353, 2012 WL 2476802, at *2 (Haw.App. June 28, 2012) (mem. op.) (emphasis in original) (quoting *Kaleikini*, 124 Hawai'i at 16–17, 237 P.3d at 1082–83 (quoting *Pub. Access Shoreline Haw. v. Haw. Cnty. Planning Comm'n* (*PASH* ), 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995))) (internal quotation marks omitted).

The ICA relied solely on the first requirement in its disposition of the case. It stated that "[b]ecause KOH does not meet the first criteria [sic]—that the agency action stemmed from a contested case hearing—we look no further and conclude [that the] circuit court did not err when it dismissed the case for lack of jurisdiction." *Id.* KOH timely filed its application for writ of certiorari on September 27, 2012.

## II. STANDARD OF REVIEW

### A. Jurisdiction

■ " 'The existence of subject matter jurisdiction is a question of law that is reviewable *de novo* under the right/wrong standard.' " *Kaniakapupu v. Land Use Comm'n*, 111 Hawai'i 124, 131, 139 P.3d 712, 719 (2006) (quoting *Aames Funding Corp. v. Mores*, 107 Hawai'i 95, 98, 110 P.3d 1042, 1045 (2005)).

## III. DISCUSSION

On certiorari review in this court, KOH makes the same arguments with regard to the jurisdiction of the circuit court to hear its initial HRS § 91–14 agency appeal from BLNR and adds that the ICA has erred in affirming the circuit court's judgment.

Nevertheless, UH maintains in this court that KOH's appeal is moot. Because mootness is a matter of justiciability and implicates the question of whether this court may validly render a decision on appeal, we consider this issue first.

### A. This case is not moot

■ UH argues, as it did below, that because BLNR ultimately granted KOH a contested case hearing, the reviewing court can not grant effective relief. UH submits that "[KOH] asked the [c]ircuit [c]ourt to remand the case with instructions to [BLNR] to provide [KOH] with a contested case hearing." UH thus concluded that because "[KOH] received the relief it requested on February 11, 2011 when [BLNR] granted its request for a contested case hearing ... the instant appeal falls squarely within the definition of moot."

KOH responds, as it also did below, that the case is not moot. In fact, it responded to UH's argument to this court by noting that it "requested not only that a contested case be provided, but also that the [permit] be stayed and reversed." KOH further notes that " '[a]s long as all of the construction authorized under the ... permit is not completed, the appeal presents an adversity of interests and possibly affords the appellant an effective remedy.' "

Crucially, BLNR has neither stayed nor revoked the permit, not even when KOH appealed or BLNR granted KOH a contested case hearing on the already-issued permit. Because the permit remains in effect despite BLNR's failure to hold a contested case hearing before voting to grant the permit, UH can still build on Haleakalā and KOH can still seek effective relief against UH. Consequently, we agree with KOH's position and conclude that this case is not moot. As a result, we now turn to the substance of KOH's appeal.

### B. The circuit court erred in dismissing, and the ICA erred in affirming the dismissal of, KOH's agency appeal based strictly on the absence of a formal contested case hearing

KOH argues to this court that although it requested and petitioned for a contested case hearing prior to BLNR's vote on UH's application and although BLNR did not hold a contested case hearing before conducting the vote at the December 1, 2010 regularly scheduled board meeting, the proceedings that did take place before the BLNR nevertheless did constitute a contested case from

which KOH can appeal to the circuit court pursuant to HRS § 91–14. Moreover, KOH maintains that pursuant to HRS chapter 91, as well as *PASH* and *Kaleikini*, an appeal may be taken even in the absence of a formal contested case hearing if the appellant has followed the procedures necessary for it to preserve its right to appeal. Indeed, much of KOH's argument follows the test this court has previously applied in *PASH* and *Kaleikini*, and it is to that test which we must now turn.

█ To determine whether a circuit court can exercise jurisdiction over an appeal brought pursuant to HRS § 91–14, we consider whether the following requirements have been met:

first, the proceeding that resulted in the unfavorable agency action must have been a contested case hearing—*i.e.*, a hearing that was (1) required by law and (2) determined the rights, duties, and privileges of specific parties; second, the agency's action must represent a final decision or order, or a preliminary ruling such that deferral of review would deprive the claimant of adequate relief; third, the claimant must have followed the applicable agency rules and, therefore, have been involved in the contested case; and finally, the claimant's legal interests must have been injured—*i.e.*, the claimant must have standing to appeal.

*Kaleikini*, 124 Hawai'i at 16–17, 237 P.3d at 1082–83 (emphases, brackets, and internal quotation marks omitted) (quoting *PASH*, 79 Hawai'i at 431, 903 P.2d at 1252).

### 1. The BLNR proceedings were a contested case hearing within the meaning of HRS § 91–14

#### a. "Required by law"

█ In order for an administrative agency hearing to be " 'required by law, it may be required by (1) agency rule, (2) statute, or (3) constitutional due process.' " *Id.* at 17, 237 P.3d at 1083 (quoting *Kaniakapupu*, 111 Hawai'i at 132, 139 P.3d at 720) (some internal quotation marks omitted).

█ At the outset, we note that no statute mandates that BLNR conduct public hearings as part of its permitting procedures. *See, e.g.*, HRS § 171–3 (2011); HRS § 171–6 (2011); HRS § 26–15(b) (2009). HRS § 183C–6 (2011), located in the chapter of HRS dealing specifically with conservation district lands, provides, in pertinent part:

(a) The department shall regulate land use in the conservation district by the issuance of permits.

(b) The department shall render a decision on a completed application for a permit within one-hundred-eighty days of its acceptance by the department. If within one-hundred-eighty days after acceptance of a completed application for a permit, the department shall fail to give notice, hold a hearing, and render a decision, the owner may automatically put the owner's land to the use or uses requested in the owner's application. When an environmental impact statement is required pursuant to chapter 343, or when a contested case hearing is requested pursuant to chapter 91, the one-hundred-eighty-days may be extended an additional ninety days at the request of the applicant. Any request for additional extensions shall be subject to the approval of the board.

Although HRS § 183C–6(b) does reference the "hold[ing] [of] a hearing" as part of the permitting process for uses in the conservation district, it does not mandate one. The sentence that contains the phrase "hold a hearing" is written as a negative conditional; in other words, if, within 180 days of accepting an application, DLNR does not give notice, does not hold a hearing, and does not render a decision on the application, then the applicant may proceed to use the land in the manner requested. Because some hearings may not be required by law but may nevertheless be held voluntarily, we cannot read the statute to require a hearing for all permit applications in the absence of mandatory language directing the agency to do so.

Indeed, the statutes in HRS chapter 171 governing DLNR and BLNR speak in general terms and delegate rulemaking authority to the agency to devise and promulgate the rules that will govern the agency's procedures in specific situations. We thus next look to those administrative rules for a re-

quirement that a public hearing be held as part of the process of considering an application for a conservation district use permit.

In this particular case, UH seeks through its application to build astronomy facilities near the summit of Haleakalā, an area which is classified as being in the general subzone of the conservation district. HAR § 13–5–25, "Identified land uses in the general subzone," provides, in pertinent part:

(a) In addition to the land uses identified in this section, all identified land uses and their associated permit or site plan approval requirements listed for the protective, limited, and resource subzones also apply to the general subzone, unless otherwise noted.

. . .

(c) Identified land uses in the general subzone and their required permits (if applicable), are listed below:

(1) Identified land uses beginning with the letter (A) require no permit from the department or board;

(2) Identified land uses beginning with the letter (B) require site plan approval by the department;

(3) Identified land uses beginning with the letter (C) require a departmental permit; and

(4) Identified land uses beginning with the letter (D) require a board permit and where indicated, a management plan.

HAR § 13–5–24 identifies "astronomy facilities" as an identified land use in the resource subzone:

R–3   ASTRONOMY FACILITIES

(D–1) Astronomy facilities under a management plan approved simultaneously with the permit, is also required.

By virtue of HAR § 13–5–25(a), astronomy facilities are also a permissible land use in the general subzone. Further, as a letter (D) land use, HAR § 13–5–25(c)(4) requires submission of an application for a board permit and simultaneous approval of the permit and a management plan.

Board permits are governed by HAR § 13–5–34, which provides in full:

(a) Applications for board permits shall be submitted to the department in accordance with section 13–5–31.

(b) A public hearing, if applicable, shall be held in accordance with section 13–5–40.

(c) The application for a board permit shall be accompanied by:

(1) The application fee which is equal to 2.5 per cent of the total project cost, but no less than $250, up to a maximum of $2,500; and

(2) A public hearing fee of $250 plus publication costs, if applicable.

(d) Contested case hearings, if applicable, and as required by law, shall be held as provided in chapter 13–1. The aggrieved appellant or person who has demonstrated standing to contest the board action may request a contested case hearing pursuant to chapter 13–1.

Finally, with respect to public hearings, HAR § 13–5–40 provides:

(a) Public hearings shall be held:

(1) On all applications for a proposed use of land for commercial purposes, (excluding site plan approvals);

(2) On changes of subzone or boundary, establishment of a new subzone, changes in identified land use, or any amendment to this chapter;

(3) On applications requiring a board permit in the protective subzone; and

(4) On all applications determined by the chairperson that the scope of proposed use, or the public interest requires a public hearing on the application.

■   Under this rule, the BLNR chairperson determined that, pursuant to HAR § 13–5–40(a)(4), the public interest required a public hearing on UH's application; this was the public hearing that took place on August 26, 2010 in Pukalani, Maui. While subsection (4), as written, does seem to indicate an amount of discretion on the chairperson's part, subsection (4) is also no less valid a prerequisite for the holding of a public hearing than any of the other subsections. Accordingly, if the chairperson determines that the scope of the

project or the public interest requires a public hearing on the application, then BLNR shall hold a public hearing.

Accordingly, based on the foregoing discussion, we conclude that UH's application necessitated a hearing required by law—*i.e.*, by the administrative rules governing DLNR and BLNR.[5]

### b. "Rights, duties, and privileges"

In this case, no formal contested case hearing was actually held before the BLNR voted to grant the permit in this case, so the question becomes whether a formal hearing would have determined—or whether the proceedings that did take place determined—the "rights, duties, and privileges of specific parties." *Kaleikini,* 124 Hawai'i at 17, 237 P.3d at 1083 (quoting *PASH,* 79 Hawai'i at 431, 903 P.2d at 1252) (internal quotation marks omitted). The inquiry here is "directed at the party whose application was under consideration." *Id.* at 24, 237 P.3d at 1090 (quoting *PASH,* 79 Hawai'i at 432, 903 P.2d at 1253) (internal quotation marks omitted). Thus, we focus on the rights, duties, and privileges of UH.

As discussed *supra* in Part III.B.1.a, UH's proposed project involves construction of a substantial complex of astronomy facilities on conservation district land. Accordingly, as provided for in the statutes and rules concerning land use in the conservation district, UH could not legally commence that construction without first submitting an application for a permit and having that application reviewed and approved by BLNR. Approval, including any conditions attached thereto, or denial of the application clearly implicates whether UH would or would not be able to engage in the requested use of building astronomy facilities at the telescope project site. Thus, a formal contested case hearing approving of denying UH's application would have determined UH's rights, duties, or privileges with regard to the project. Even in

the absence of a formal contested case hearing, we point out that the proceedings that otherwise took place, including the vote to grant the permit, in fact did determine UH's rights, duties, and privileges.

**2. BLNR's decision to approve the permit without either granting or denying KOH's contested case hearing request was a "final decision and order" within the meaning of HRS § 91–14**

We must next "examin[e] whether the agency's action represents 'a final decision or order,' or 'a preliminary ruling' such that deferral of review would deprive the claimant of adequate relief." *Kaleikini,* 124 Hawai'i at 26, 237 P.3d at 1092 (ellipses and some internal quotation marks omitted) (quoting *PASH,* 79 Hawai'i at 431, 903 P.2d at 1252). Again, our decisions in *PASH* and *Kaleikini* provide the most useful guidance for our analysis.

In *PASH,* an organization (PASH) and an individual (Pilago) opposed a developer's application to the Hawai'i County Planning Commission (HCPC) for a special management area (SMA) use permit and requested contested case hearings. 79 Hawai'i at 429, 903 P.2d at 1250. HCPC denied the requests on the ground that PASH and Pilago did not have standing to participate in a contested case and subsequently issued the permit. *Id.* This court affirmed the ICA's decision affirming the circuit court's order (with respect to PASH, but reversing the circuit court's order as to Pilago) to remand to HCPC for the purpose of holding a contested case hearing in which PASH would be allowed to participate. *Id.*

In *Kaleikini,* the discovery of iwi, or Native Hawaiian burial remains, at a construction site in Honolulu necessitated submission of a burial treatment plan by the developer. 124 Hawai'i at 5–7, 237 P.3d at 1071–73.

---

5. As discussed in the Concurrence, KOH also argued to the circuit court, to the ICA, and to this court that a hearing was required by law on the ground of constitutional due process, under the provisions of the Hawai'i Constitution protecting Native Hawaiian rights and the right to a clean and healthful environment. *See* Haw.

Const. art. XI, § 9, art. XII, § 7. Because we conclude that the administrative rules required that a hearing be held, we need not reach this argument. Nevertheless, we do discuss KOH's Native Hawaiian and environmental interests with regard to their standing to appeal. *See infra* Part III.B.4.

After the Oʻahu Island Burial Council approved the plan, Kaleikini wrote a letter to DLNR requesting a contested case hearing. *Id.* at 6–7, 237 P.3d at 1071–72. DLNR denied her request, and Kaleikini filed a notice of agency appeal in circuit court to seek review of that denial. *Id.* at 7, 237 P.3d at 1072. The circuit court dismissed the appeal because no contested case hearing had been held, but recognized that it would be impossible for an appellant to obtain judicial review if an agency improperly denies the request for a contested case hearing. *Id.* at 7–8, 237 P.3d at 1073–74. Although the ICA then dismissed Kaleikini's secondary appeal as moot, this court held that it could consider the case pursuant to the public interest exception to the mootness doctrine. *Id.* at 12–13, 237 P.3d at 1078–79. On the merits, this court noted that the relevant administrative rule provided Kaleikini with a procedural vehicle to obtain a contested case and that she had followed the applicable procedures to request a contested case hearing; therefore, this court's inquiry focused on whether Kaleikini met the requirements of HRS § 91–14 under the test we set out in *PASH*. *Id.* at 16, 237 P.3d at 1082. With respect to this prong of the test, we concluded that DLNR's decision to deny Kaleikini's request for a contested case hearing constituted a "final decision and order" of the agency because "it ended the litigation." *Id.* at 26, 237 P.3d at 1092.

■ Here, KOH's oral and written requests for a contested case hearing prior to the December 1, 2010 vote were neither granted nor denied by the agency. However, the absence of a formal denial is not dispositive of the issue. While in *PASH* and *Kaleikini* we concluded that the formal denial of the contested case hearings provided the requisite finality to enable the respective appellants to appeal to the circuit court pursuant to HRS § 91–14, we note here that the failure to either grant or deny KOH's requests for a contested case hearing became an effective denial when BLNR proceeded to render a final decision by voting to grant the permit to UH at the December 1, 2010 board meeting. Accordingly, we conclude that BLNR's vote to grant the permit in the face of a valid pending request for a contested case hearing satisfies this prong of the test.

### 3. KOH followed all applicable agency rules in requesting a contested case hearing

The third part of the *PASH/Kaleikini* test "requires a determination [of] whether the claimant followed the applicable agency rules and, therefore, was involved in the contested case." *Id.* at 26, 237 P.3d at 1092 (ellipses, brackets, and internal quotation marks omitted) (quoting *PASH*, 79 Hawaiʻi at 431, 903 P.2d at 1252).

The applicable agency rules, HAR §§ 13–1–28 and 13–1–29, provide as follows:

§ 13–1–28   Contested case hearings.

(a) When required by law, the board shall hold a contested case hearing upon its own motion or on a written petition of any government agency or any interested person.

(b) The contested case hearing shall be held after any public hearing which by law is required to be held on the same subject matter.

(c) Any procedure in a contested case may be modified or waived by stipulation of the parties.

§ 13–1–29   Request for hearing.

(a) On its own motion, the board may hold a contested case hearing. Others must both request a contested case and petition the board to hold a contested case hearing. An oral or written request for a contested case hearing must be made to the board no later than the close of the board meeting at which the subject matter of the request is scheduled for board disposition. An agency or person so requesting a contested case must also file (or mail a postmarked) written petition with the board for a contested case no later than ten calendar days after the close of the board meeting at which the matter was scheduled for disposition. For good cause, the time for making the oral or written request or submitting a written petition or both may be waived.

(b) Except as otherwise provided in section 13–1–31.1,[6] the formal written peti-

tion for a contested case hearing shall contain concise statements of:

(1) The nature and extent of the requestor's interest that may be affected by board action on the subject matter that entitles the requestor to participate in a contested case;

(2) The disagreement, if any, the requestor has with an application before the board;

(3) The relief the requestor seeks or to which the requestor deems itself entitled;

(4) How the requestor's participation would serve the public interest; and

(5) Any other information that may assist the board in determining whether the requestor meets the criteria to be a party pursuant to section 13-1-31.

As we noted in the factual background of this case, KOH first submitted a written petition for a contested case hearing on May 24, 2010; it resubmitted that petition on July 8, 2010 after a pro forma denial by a person at DLNR who apparently did not have authority to reject the original petition. The May 24, 2010 petition, which appears in the record, contains the "concise statements" required by HAR § 13-1-29(b). KOH also made an oral request for a contested case hearing at the August 26, 2010 public hearing in Pukalani, Maui; aside from that request, we also note that at the public hearing, KOH "testified in opposition to the project, citing its impacts on resources in the conservation district[.]"

Moreover, after the vote to grant the permit passed at the December 1, 2010 board meeting but before the close of the meeting, KOH made yet another oral request for a contested case hearing pursuant to HAR § 13-1-29(a). The next day, December 2, 2010, KOH filed yet another written petition with BLNR requesting a contested case hearing, also pursuant to HAR § 13-1-29(a).

There is no question that KOH did all it could, both prior to and following BLNR's decision on the permit, to comply with the agency's rules for requesting a contested case hearing.

### 4. KOH has standing to appeal because it has sufficiently alleged injury to its interests

■ The final prong of the *PASH/Kaleikini* test "requires that the claimant's legal interests must have been injured—*i.e.*, the claimant must have standing to appeal." *Kaleikini*, 124 Hawai'i at 26, 237 P.3d at 1092 (citing *PASH*, 79 Hawai'i at 431, 903 P.2d at 1252). We evaluate standing using the "'injury in fact' test requiring: '(1) an actual or threatened injury, which, (2) is traceable to the challenged action, and (3) is likely to be remedied by favorable judicial action.'" *Ka Pa'akai O Ka'Aina v. Land Use Comm'n*, 94 Hawai'i 31, 42, 7 P.3d 1068, 1079 (2000) (quoting *Citizens for the Prot. of the N. Kohala Coastline v. Cnty. of Haw.*, 91 Hawai'i 94, 100, 979 P.2d 1120, 1126 (1999)). However, in cases involving native Hawaiian and environmental interests, we have been especially concerned that the doctrine of standing not serve as a barrier to a plaintiff's legitimate claims:

With regard to native Hawaiian standing, this court has stressed that "the rights of native Hawaiians are a matter of great public concern in Hawai['i]." *Pele Defense Fund v. Paty*, 73 Haw. 578, 614, 837 P.2d 1247, 1268 (1992), *certiorari denied*, 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993). Our "fundamental policy [is] that Hawaii's state courts should provide a forum for cases raising issues of broad public interest, and that the judicially imposed standing barriers should be lowered when the "needs of justice" would best be served by allowing a plaintiff to bring claims before the court." *Id.* at 614–15, 837 P.2d at 1268–69 (citing *Life of the Land v. The Land Use Comm'n* [ (*Life of the Land II*) ], 63 Haw. 166, 176, 623 P.2d 431, 441 (1981)).

We have also noted that, "where the interests at stake are in the realm of environmental concerns[,] 'we have not been inclined to foreclose challenges to adminis-

---

6. HAR § 13-1-31.1 applies to hearings concerning violations of the administrative rules and

does not apply to a permitting situation as in the present case.

trative determinations through restrictive applications of standing requirements.' " *Citizens,* 91 Hawai'i at 100–01, 979 P.2d at 1126–27 (quoting *Mahuiki v. Planning Commission,* 65 Haw. 506, 512, 654 P.2d 874, 878 (1982) (quoting *Life of the Land [II],* 63 Haw. at 171, 623 P.2d at 438)). Indeed, "[o]ne whose legitimate interest is in fact injured by illegal action of an agency or officer should have standing because justice requires that such a party should have a chance to show that the action that hurts his interest is illegal." *Mahuiki,* 65 Haw. at 512–13, 654 P.2d at 878 (quoting *East Diamond Head Association v. Zoning Board of Appeals,* 52 Haw. 518, 523 n. 5, 479 P.2d 796, 799 n. 5 (1971) (citations omitted)). *See also Mahuiki,* 65 Haw. at 515, 654 P.2d at 880 (those who show aesthetic and environmental injury are allowed standing to invoke judicial review of an agency's decision under HRS chapter 91 where their interests are "personal" and "special," or where a property interest is also affected) (citing *Life of the Land v. Land Use Commission [(Life of Land I* )], 61 Haw. 3, 8, 594 P.2d 1079, 1082 (1979)); *Akau v. Olohana Corporation,* 65 Haw. 383, 390, 652 P.2d 1130, 1135 (1982) (an injury to a recreational interest is an injury in fact sufficient to constitute standing to assert the rights of the public for purposes of declaratory and injunctive relief); *Life of the Land [II],* 63 Haw. at 176–77, 623 P.2d at 441 (group members had standing to invoke judicial intervention of LUC's decision "even though they are neither owners nor adjoining owners of land reclassified by the Land Use Commission in [its] boundary review"); *Life of the Land [I],* 61 Haw. at 8, 594 P.2d at 1082 (group members who lived in vicinity of reclassified properties and used the subject area for "diving, swimming, hiking, camping, sightseeing, horseback riding, exploring and hunting and for aesthetic, conservational, occupational, professional and academic pursuits," were specially, personally and adversely affected by LUC's decision for purposes of HRS § 91–14).

*Id.* at 42–43, 7 P.3d at 1079–80; *see also Mottl v. Miyahira,* 95 Hawai'i 381, 393, 23 P.3d 716, 728 (2001) ("To date, the appellate courts of this state have generally recognized public interest concerns that warrant the lowering of standing barriers in two types of cases: those pertaining to environmental concerns and those pertaining to native Hawaiian rights.").

■ In its petition to BLNR requesting a contested case hearing and in its statement of the case on agency appeal to the circuit court, KOH emphasized that its members have used the Haleakalā summit area to engage in traditional and customary practices as well as enjoy the views, natural beauty, and quiet of the area and thus allege that construction of the proposed facilities will customary practices and enjoy the area. Due to the procedural history of this case, in which the requested contested case hearing was not held prior to approving the permit and the circuit court granted the motion to dismiss KOH's agency appeal, we are bound, even on further appeal, to deem KOH's factual allegations as true. *See, e.g., Buscher v. Boning,* 114 Hawai'i 202, 212, 159 P.3d 814, 824 (2007) ("A trial court's ruling on a motion to dismiss is reviewed *de novo.* The court must accept plaintiff's allegations as true and view them in the light most favorable to the plaintiff . . . ." (internal citations omitted)).

■ Because we must accept KOH's assertions as true, we must conclude that KOH had standing to pursue its HRS § 91–14 appeal based on the threatened injury to its Native Hawaiian traditional and customary practices and to its aesthetic and environmental interests in the summit area. *See, e.g., Kaleikini,* 124 Hawai'i at 26, 237 P.3d at 1092; *Mottl,* 95 Hawai'i at 393, 23 P.3d at 728; *Ka Pa'akai,* 94 Hawai'i at 42–43, 7 P.3d at 1079–80; *Citizens,* 91 Hawai'i at 100–01, 979 P.2d at 1126–27; *PASH,* 79 Hawai'i at 434 & n. 15, 903 P.2d at 1255 & n. 15; *Pele Def. Fund,* 73 Haw. at 614–15, 837 P.2d at 1268–69; *Mahuiki,* 65 Haw. at 515–16, 654 P.2d at 880; *Life of the Land II,* 63 Haw. at 176–77, 623 P.2d at 441; *Life of the Land I,* 61 Haw. at 8, 594 P.2d at 1082.

Accordingly, KOH has met this final requirement, and thus has met all of the requirements, of the *PASH/Kaleikini* test. We therefore conclude that BLNR should

have held a contested case hearing as required by law and requested by KOH prior to decision making on UH's application, and that the circuit court had jurisdiction to hear KOH's HRS § 91–14 agency appeal.

## IV. CONCLUSION

Based on the foregoing, we conclude that KOH's appeal is not moot and that a contested case hearing should have been held, as required by law and properly requested by KOH, on UH's application prior to BLNR's vote on the application. Accordingly, we vacate the ICA's July 30, 2012 judgment on appeal, vacate the circuit court's March 29, 2011 final judgment and March 15, 2011 order granting the motion to dismiss, and remand to the circuit court for further proceedings consistent with this opinion regarding KOH's request for stay or reversal of the conservation district use permit granted by BLNR to UH on December 1, 2010.

Concurring Opinion by ACOBA, J., with whom POLLACK, J., Joins.

I concur in the result, but write separately to address four issues related to the right of Petitioner/Appellant–Appellant Kilakila ʻO Haleakalā (KOH) to a contested case hearing and subject matter jurisdiction.[1] First, I would hold that jurisdiction over KOH's claims arises independently under article XI, section 7 of the Hawaiʻi Constitution[2] in light of specific provisions therein protecting native Hawaiian rights. Second, Respondent/Appellee–Appellee Board of Land and Natural Resources (BLNR) was required to hold a contested case hearing prior to the issuance of a conservation district use permit (CDUP or permit), as a matter of constitutional due process, because Respondent/ Appellee–Appellee University of Hawaiʻi (UH) had a "property interest" in the CDUP, and the issuance of the CDUP would adversely impact KOH's ability to engage in native Hawaiian traditional and customary practices as protected by art. XII, § 7 of the Hawaiʻi Constitution. *See Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawaiʻi 64, 881 P.2d 1210 (1994) (holding that constitutional due process protections mandate a hearing "where the issuance of a permit implicating an applicant's property rights adversely affects the constitutionally protected rights of other interested persons who have followed the agency's rules governing participation in contested cases."). Third, jurisdiction arises under the public trust doctrine set forth in art. XI, § 1 of the Hawaiʻi Constitution[3]. Fourth, BLNR's granting of the permit constituted an appealable contested case hearing, despite BLNR's assertion that it had not yet acted on KOH's petition for a contested case hearing, because this court has adopted a functional approach to contested case hearings that considers the effect of an agency decision rather than relying on an agency's characterization of that decision.

I.

This case involves appellate review of the December 1, 2010 decision by BLNR to grant the conservation district use application (CDUA) filed by UH. It is undisputed that KOH timely requested a contested case hearing before BLNR, in accordance with the procedures set forth by Hawaiʻi Adminis-

---

1. I concur with the majority that this case is not moot, majority's opinion at 33, that BLNR's vote to grant the permit application constituted an effective denial of KOH's requests for a contested case hearing, majority's opinion at 37, and that the case should be remanded to the circuit court of the first circuit (the court) for further proceedings regarding KOH's request for stay or reversal of the decision to issue the permit, majority's opinion at 40.

2. Haw. Const. art. XII, § 7 provides:

   The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupuaʻa tenants who are descen-

dants of native Hawaiians who inhabited the Hawaiian island prior to 1778, subject to the right of the State to regulate such rights.

3. Haw. Const. art. XI, § 1 provides:

   For the benefit of present and future generations, the State and its political subdivisions shall conserve and protect Hawaii's natural beauty and all natural resources, including land, water, air, minerals and energy sources, and shall promote the development and utilization of these resources in a manner consistent with their conservation and in furtherance of the self-sufficiency of the State.

   All public natural resources are held in trust by the State for the benefit of the people.

trative Rules (HAR) § 13–1–28(a) (2009)[4], but BLNR did not take action on these requests. On December 2, 2010, the CDUP was issued.

On December 13, 2010, KOH filed an appeal in the court, challenging BLNR's decision on December 1, 2010 as "(a) effectively denying the timely request of [KOH] for a contested case hearing on [UH's CDUA]; and (b) approving this [CDUA] for a solar telescope project."[5] KOH stated that the court had jurisdiction over the appeal pursuant to HRS § 91–14(a) (Supp.2004)[6]. UH filed a motion to dismiss KOH's notice of appeal, alleging, *inter alia* that the court lacked jurisdiction over the appeal. BLNR filed a joinder in UH's motion to dismiss.

In the meantime, on February 11, 2011, BLNR granted KOH's earlier request for a contested case hearing and subsequently appointed a hearing officer. BLNR conducted the contested case hearing on February 18, 2011.

Also on February 18, 2011, the court held a hearing on the motion to dismiss KOH's appeal, and the court orally ruled to grant the motion. The court filed its final judgment on March 29, 2011.

KOH appealed to the Intermediate Court of Appeals (ICA), alleging that the court had erred in dismissing its case for lack of jurisdiction. The ICA filed a memorandum opinion on June 28, 2012, and its judgment on July 30, 2012, affirming the circuit court's final judgment dismissing the appeal for lack of jurisdiction.

4. HAR § 13–1–28 provides:
   (a) When required by law, [BLNR] shall hold a contested case hearing upon its own motion or on a written petition of any government agency or any interested person.
   (b) The contested case hearing shall be held after any public hearing which by law is required to be held on the same subject matter.
   (c) Any procedure in a contested case may be modified or waived by stipulation of the parties.

5. The Honorable Rhonda A. Nishimura presided.

6. HRS 91–14(a) provides:
   (a) Any person aggrieved by a final decision and order in a contested case or by a prelimi-

## II.

KOH asserts that the court has jurisdiction pursuant to HRS § 91–14(a) which provides that "[a]ny person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]" (Emphases added.) A "contested case" is defined as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for an agency hearing." HRS § 91–1 (1993). In determining whether the court had jurisdiction pursuant to HRS § 91–14(a) over KOH's appeal from BLNR's decision granting the CDUP to UH, the following test is applied:

> [F]irst, the proceeding that resulted in the unfavorable agency action must have been a 'contested case' hearing—*i.e.,* a hearing that was (1) 'required by law' and (2) determined the rights, duties, and privileges of specific parties'; second, the agency's action must represent 'a final decision and order,' or 'a preliminary ruling' such that deferral of review would deprive the claimant of adequate relief; third, the claimant must have followed the applicable agency rules and, therefore, have been involved 'in' the contested case; and finally, the claimant's legal interests must have been injured—*i.e.,* the claimant must have standing to appeal."

*Kaleikini v. Thielen,* 124 Hawai'i 1, 16–17, 237 P.3d 1067, 1082–83 (2010) (emphases omitted) (brackets omitted) (quoting *Public*

nary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law. Notwithstanding any other provision of this chapter to the contrary, for the purposes of this section, the term 'person aggrieved' shall include an agency that is party to a contested case proceeding before that agency or another agency.

*Access Shoreline Hawai'i v. Hawai'i Cnty. Planning Comm'n,* 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) (*PASH* )).

## III.

With respect to the first requirement, an agency hearing is "required by law" if "there is a 'statutory, rule-based, or constitutional mandate for a hearing.' " *E & J Lounge Operating Co. v. Liquor Comm'n of City & Cnty. of Honolulu,* 118 Hawai'i 320, 330, 189 P.3d 432, 442 (2008). The majority holds that BLNR was required to hold a contested case hearing pursuant to the administrative rules governing Respondent/ Appellant–Appellant Department of Land and Natural Resources (DLNR) and BLNR.[7] Majority's opinion at 35. However, the Hawai'i Constitution provides constitutional mandates for a contested case hearing in this case through three separate means.

First, there is an independent basis for KOH's entitlement to a contested case hearing in the Hawai'i Constitution's protection of native Hawaiian rights pursuant to article XI, section 7. *See Ka Pa'akai O Ka'Aina v. Land Use Comm'n,* 94 Hawai'i 31, 46, 7 P.3d 1068, 1083 (2000). Second, KOH may assert a protected constitutional interest in native Hawaiian rights that would be adversely affected by the issuance of the permit, and thus would be entitled to a contested case hearing pursuant to *Puna Geothermal.* Third, as the issuance of the permit in the instant case would implicate the public trust doctrine, KOH is entitled to a contested case hearing on the basis that it has standing to vindicate the public trust. *See In re Water Use Permit Applications,* 94 Hawai'i 97, 143, 9 P.3d 409, 455 (2000) (*Waiahole I* ).

7. The majority concludes that HAR § 13–5–40(a)(4) (2011) provided a basis for a contested case hearing that was "required by law." Majority's opinion at 35. HAR § 13–5–40(a)(4) states that "Public hearings shall be held ... [o]n all applications determined by the chairperson that the scope of proposed use, or the public interest requires a public hearing on the application."

8. HRS § 1–1 provides:

## IV.

### A.

It is well-established that "the State and its agencies are obligated to protect the reasonable exercise of customarily and traditionally exercised rights of Hawaiians to the extent feasible." *Ka Pa'akai,* 94 Hawai'i at 35, 7 P.3d at 1072 (citing *PASH,* 79 Hawai'i at 450 n. 43, 903 P.2d at 1271 n. 43). To reiterate, the Hawai'i Constitution provides that, "[t]he State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua'a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights." Haw. Const. art. XII, § 7. These "[t]raditional and customary rights <u>shall include</u>, but not be limited to, the cultivation or propagation of taro on one's own kuleana and the gathering of hihiwai, opae, o'opu, limo, thatch, ti leaf, aho cord, and medicinal plants for subsistence, cultural and religious purposes." HRS § 174C–101(c) (1993).

In *PASH,* this court held that "those persons who are 'descendants of native Hawaiians who inhabited the islands prior to 1778' and who assert otherwise valid customary and traditional Hawaiian rights under HRS § 1–1 [ (2009)[8]] are entitled to protection regardless of their blood quantum." 79 Hawai'i at 449, 903 P.2d at 1270 (emphasis omitted) (citing Haw. Const. art. XII, § 7). *PASH* stated that "[c]ustomary and traditional rights in these islands flow from native Hawaiians' pre-existing sovereignty." *Id.* In *Ka Pa'akai,* this court stated that, "[i]n order for the rights of native Hawaiians to be meaningfully preserved and protected, they must be enforceable[,]" and thus, "state

The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawai'i in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage, provided that no person shall be subject to criminal proceedings except as provided by the written laws of the United States or of the State.

agencies such as the [Land Use Commission] may not act without independently considering the effect of their actions on Hawaiian traditions and practices." 94 Hawai'i at 46, 7 P.3d at 1083.

Recently, in *In re 'Iao Ground Water Management Area High–Level Source Water Use Permit Applications*, 128 Hawai'i 228, 287 P.3d 129 (2012), one of the appellants was an organization whose supporters engaged in traditional and customary gathering practices and cultivation. 128 Hawai'i at 241, 287 P.3d at 142. The concurrence noted that "where native Hawaiian Petitioners claim that their native Hawaiian rights are adversely affected by the [Land Use Commission's] decision ... they may sue to enforce their rights under Article XII, section 7 of the Hawai'i Constitution." *Id.* at 271, 287 P.3d at 172 (Acoba, J., concurring) (citing *Kaleikini*, 124 Hawai'i at 31, 237 P.3d at 1097) (Acoba, J., concurring) ("native Hawaiians ... have equal rights to a contested case hearing where these [traditional and customary] practices are adversely affected.").

### B.

In connection with art. XII, section 7, KOH argues in its Application that there are constitutional rights at issue belonging to a group that engages in traditional and customary practices on Haleakalā.[9] In KOH's Statement of the Case filed with the court, it stated that: "[t]he objectives of [KOH] include protection of traditional and customary practices as well as natural resources[,]" that "[a]t the heart of Hawaiian culture is mālama 'āina, or care for the land, a traditional and customary practice of [n]ative Hawaiians who inhabited the Hawaiian Islands prior to 1778[,]" and that "[t]he directors of [KOH] engage in traditional and customary practices on Haleakalā."

KOH alleges that these practices would be adversely affected by the construction of the telescope that would be facilitated by BLNR's grant of the CDUP. Specifically, KOH states that "[t]he construction of more facilities on Haleakalā will adversely affect directors of [KOH], including their ability to engage in traditional and customary practices as well as enjoy the vistas, natural beauty and quiet of the area." It further alleges that "[t]he construction of more facilities on Haleakalā will adversely affect [KOH], including its ability to fulfill its mission." According to KOH, the final environmental impact statement (FEIS) accepted by the University concluded that "[c]onstruction and operation of the proposed [ ] project ... would result in major, adverse, short- and long-term, direct impacts on the traditional cultural resources in the summit area." KOH also quotes the FEIS as stating that mitigation measures "would not reduce the level of impacts."

Inasmuch as KOH's claim is that native Hawaiian rights are adversely affected by CDUP, KOH may enforce its right under article XII, section 7 of the Hawai'i Constitution. In *Kalipi v. Hawaiian Trust Co.*, 66 Haw. 1, 656 P.2d 745 (1982), for example, the plaintiff, a native Hawaiian, brought suit claiming the right to enter the defendant's undeveloped property for traditional gathering pursuant to HRS § 7–1 (1976). 66 Haw. at 5, 656 P.2d at 748. This court decided the claim on the merits, assuming that it had jurisdiction over the case and that the plaintiff would have a right to sue to enforce his native Hawaiian rights. *Id.* at 7–8, 656 P.2d at 749–50. *Kalipi* stated that it is this "court's obligation to preserve and enforce such traditional rights [as] ... part of our Hawai'i State Constitution." *Id.* at 4–5, 656 P.2d at 748.

Similarly, here, the court would have subject matter jurisdiction pursuant to Hawai'i Constitution article XII, section 7 to consider KOH's appeal. *See also, In re 'Iao*, 128 Hawai'i at 272, 287 P.3d at 173 (Acoba, J., concurring) (concluding that this court had subject matter jurisdiction pursuant to, *inter*

---

9.  KOH's allegations are accepted as true for purposes of determining jurisdiction. *See Office of Hawaiian Affairs v. State*, 110 Hawai'i 338, 350, 133 P.3d 767, 780 (2006) (review of a motion to dismiss for lack of subject matter jurisdiction "is based on the contents of the complaint, the alle-gations of which <u>we accept as true and construe in the light most favorable to the plaintiff</u>.") (emphasis added) (quoting *Norris v. Hawaiian Airlines, Inc.*, 74 Haw. 235, 239–50, 842 P.2d 634, 637 (1992) (internal quotation marks and citation omitted)).

*alia,* Haw. Const. art. XII, § 7, to consider a claim that the Land Use Commission's decision was affecting native Hawaiians in the exercise of their rights); *AlohaCare v. Dep't of Human Servs.,* 127 Hawai'i 76, 87, 276 P.3d 645, 656 (2012) (noting that the Hawai'i Constitution vests judicial power in the courts to interpret the Hawai'i Constitution). KOH alleges that BLNR's decision adversely affects its constitutional rights, and thus KOH has a legitimate claim of entitlement under the Constitution. *See Kaleikini,* 124 Hawai'i at 31, 237 P.3d at 1097 (Acoba, J., concurring) ("native Hawaiians ... have equal rights to a contested case hearing where these [traditional and customary] practices are adversely affected.").

## V.

KOH also had a constitutional right to a contested case hearing under the framework set forth by this court in *Puna Geothermal.* As noted, in order to satisfy HRS § 91–14(a) where no contested case hearing has in fact been held, a contested case hearing must have been "required by law." *PASH,* 79 Hawai'i at 431, 903 P.2d at 1252. *Puna Geothermal* held that a hearing can be "required by law" not only where required by statute or agency rule, but also where it is mandated by constitutional protections. 77 Hawai'i at 68, 881 P.2d at 1214.

The constitutional protections articulated in *Puna Geothermal* are present "whenever the claimant seeks to protect a 'property interest,' in other words, a benefit to which the claimant is legitimately entitled." *Id.* (quoting *Bush v. Hawaiian Homes Comm'n,* 76 Hawai'i 128, 136, 870 P.2d 1272, 1280 (1994)). Thus, in order to determine whether KOH is entitled to a contested case hearing pursuant to the *Puna Geothermal* framework, it must be determined whether KOH's asserted interest is a property interest "within the meaning of the due process clause of the federal and state constitutions." *Sandy Beach Def. Fund v. City & Cnty. of Honolulu,* 70 Haw. 361, 376, 773 P.2d 250, 260 (1989).

In addressing this question, *Puna Geothermal* is directly on point. In *Puna Geothermal,* this court held that "as a matter of

constitutional due process, an agency hearing is also required where the <u>issuance</u> of a permit implicating an applicant's property rights adversely affects the constitutionally protected rights <u>of other interested persons</u> who have followed the agency's rules governing participation in contested cases." 77 Hawai'i at 68, 881 P.2d at 1214 (first emphasis in original, second emphasis added). *See also In re 'Iao,* 128 Hawai'i at 274, 287 P.3d at 175 (Acoba, J., concurring) ("Applying *Puna Geothermal,* [plaintiffs] would be entitled to a contested case hearing as a matter of due process if they claimed that their constitutional rights were adversely affected by the permit applications of [defendants]."); *Town v. Land Use Comm'n,* 55 Haw. 538, 548, 524 P.2d 84, 91 (1974) (allowing plaintiffs who owned adjoining property to challenge the Land Use Commission's approval of a landowner's petition to change the designation of his property as a "contested case").

First, BLNR's decision as to whether to issue the permit plainly affects the property interests of UH. UH sought the CDUP in order to build a solar telescope on the subject property near the summit of Haleakalā.

Second, BLNR's decision to issue the permit adversely affects the constitutionally protected rights of KOH. *See Puna Geothermal,* 77 Hawai'i at 68, 881 P.2d at 1214. As discussed *supra,* KOH asserts a right, as set forth in the Hawai'i Constitution, protecting the ability of native Hawaiians to engage in customary rights and practices. *See, e.g., PASH,* 79 Hawai'i at 449, 903 P.2d at 1270; *Ka Pa'akai O Ka'Aina,* 94 Hawai'i at 46, 7 P.3d at 1083; *Kaleikini,* 124 Hawai'i at 43, 237 P.3d at 1109 (Acoba, J., concurring).

KOH further asserts that the issuance of the permit in the instant case would adversely affect the ability of its directors to engage in customary rights and practices, because the proposed project would "result in major, adverse, short- and long-term, direct impacts on the traditional cultural resources in the summit area" that could not be reduced through mitigation measures.

Finally, KOH met all the procedural requirements set forth by BLNR governing

participation in a contested case hearing.[10] With respect to contested case proceedings, DLNR promulgated HAR § 13–1–28, which, to reiterate, provides that

> (a) When required by law, the board shall hold a contested case hearing upon its own motion <u>or on a written petition of</u> any government agency or <u>any interested person.</u>
>
> (b) The contested case hearing shall be held after any public hearing which by law is required to be held on the same subject matter.
>
> (c) Any procedure in a contested case may be modified or waived by stipulation of the parties.

(Emphasis added). It is undisputed that KOH filed a written petition for a contested case hearing regarding the CDUA on May 24, 2010.

HAR § 13–1–29 (2009) sets out additional procedural requirements for a formal written petition for a contested case hearing. It states as follows:

> § 13–1–29. Request for Hearing.
>
> (a) On its own motion, the board may hold a contested case hearing. <u>Others must both request a contested case and petition the board to hold a contested case hearing. An oral or written request for a contested case hearing must be made to the board no later than the close of the board meeting at which the subject matter of the request is scheduled for board disposition. An agency or person so requesting a contested case must also file (or mail a postmarked) written petition with the board for a contested case no later than ten calendar days after the close of the board meeting at which the matter was scheduled for disposition.</u> For good cause, the time for making the oral or written request or submitting a written petition or both may be waived.
>
> (b) Except as otherwise provided in section 13–1–31.1, the <u>formal written peti-</u>

tion for a contested case hearing shall contain concise statements of:

> (1) The nature and extent of the requestor's interest that may be affected by board action on the subject matter that entitles the requestor to participate in a contested case;
>
> (2) The disagreement, if any, the requestor has with an application before the board;
>
> (3) The relief the requestor seeks or to which the requestor deems itself entitled;
>
> (4) How the requestor's participation would serve the public interest; and
>
> (5) Any other information that may assist the board in determining whether the requestor meets the criteria to be a party pursuant to section 13–1–31.

(Emphases added.)

KOH submitted its petition for a contested case hearing "no later than ten calendar days after the close of the board meeting at which the matter was scheduled for disposition," *see* HAR § 13–1–29(a). KOH also made an oral request for a contested case hearing on August 26, 2010 at the public hearing, which was before the close of BLNR's November 22, 2010 and December 1, 2010 meetings during which BLNR discussed and ultimately voted on the CDUP. Thus, KOH fully complied with HAR § 13–1–29(a) and therefore met the procedural requirements for participation in a contested case hearing.

Here, the <u>issuance</u> of a permit implicates the applicant UH's property rights, and would adversely affect the constitutionally protected rights of KOH as "other interested persons." *See Puna Geothermal,* 77 Hawai'i at 68, 881 P.2d at 1214. Further, KOH followed BLNR's rules governing participation in contested cases. *See id.* Accordingly, a contested case hearing was "required by law" as a matter of constitutional due process. *See id.; see also In re ʻIao,* 128 Hawai'i at 274, 287 P.3d at 175 (Acoba, J., concurring).

---

10. As a result, KOH has also satisfied the third requirement from *PASH,* that "the claimant followed the applicable agency rules, and therefore, was involved in the contested case." *PASH,* 79 Hawai'i at 431, 903 P.2d at 1252.

## VI.

### A.

Moreover, KOH is entitled to a contested case hearing because it has standing to vindicate the public trust doctrine. As noted, art. XI, section 1 of the Hawai'i Constitution provides that "[a]ll public natural resources are held in trust by the State for the benefit of the people." In *Waiahole I*, this court held that "[t]he public trust ... is a state constitutional doctrine. As with other state constitutional guarantees, the ultimate authority to interpret and defend the public trust in Hawai'i rests with the courts of this state." 94 Hawai'i 97, 143, 9 P.3d 409, 455 (2000) (citing *State v. Quitog*, 85 Hawai'i 128, 130 n. 3, 938 P.2d 559, 561 n. 3 (1997)). Where such a public trust exists, the state is obligated to manage and preserve public resources "[f]or the benefit of present and future generations[.]" Haw. const. Art. XI, § 1; *see In re 'Iao*, 128 Hawai'i at 277, 287 P.3d at 179 (Acoba, J., concurring).

KOH's Statement of the Case states that the construction of more facilities on Haleakalā will adversely affect the ability of Petitioner's directors to "enjoy the vistas, natural beauty and quiet of the area." As an organization, KOH therefore seeks to protect the natural resources, including cultural resources, of the area.

BLNR's decision as to whether or not to grant UH's CDUP application implicates the public trust in the same way that the use of state water resources implicated the public trust in *In re 'Iao*. *See In re 'Iao*, 287 P.3d at 143–45, 128 Hawai'i at 242–244. In that case, this court held that "the ramifications of an erroneous [Interim Instream Flow Standard for a particular water system] could offend the public trust, and [was] simply too important to deprive parties of due process and judicial review." *Id.* at 145, 128 Hawai'i at 244, 287 P.3d 129. Similarly, here, the ramifications of an erroneously-granted CDUP could impact the public trust, and thus KOH is entitled to judicial review of BLNR's decision to grant the CDUP. The potential impact to the public trust could occur as soon as the CDUP was granted, and therefore that was the appropriate time for judicial review, rather than during the post-permit contested case hearing.

### B.

KOH has standing to assert a public trust claim and is therefore entitled to a contested case hearing. A "public trust claim can be raised by members of the public who are affected by potential harm to the public trust." *In re 'Iao*, 128 Hawai'i at 281, 287 P.3d at 182 (Acoba, J., concurring).

The current standing formulation for public trust claims, specifically the "injury in fact" requirement, *see Akau v. Olohana Corp.*, 65 Haw. 383, 388–89, 652 P.2d 1130, 1134 (1982), conflicts with the broad constitutional basis underlying the public trust doctrine. *See Waiahole I*, 94 Hawai'i at 132, 9 P.3d at 444 ("Article XI, section I and article XI, section 7 adopt the public trust doctrine as a fundamental principle of constitutional law in Hawai'i.") Indeed, the "injury in fact" test "relates essentially to individual harm and therefore emphasizes the private interest...." *In re 'Iao*, 128 Hawai'i at 281, 287 P.3d at 182 (Acoba, J., concurring). "Such a formulation would appear ill-suited as a basis for determining standing to sue to vindicate the public trust doctrine." *Id.* (citing *Akau*, 65 Haw. at 388–89, 652 P.2d at 1134).

Thus, upon a determination that the plaintiff is asserting a claim pursuant to the public trust doctrine, a plaintiff should not be required to show an individualized injury in fact, but rather, any member of the public who is "affected by potential harm to the public trust" should be able to raise a public trust claim. *Id.* Under this test, a plaintiff would articulate how he or she, as a member of the public, is adversely affected by the potential harm to the public trust. Such a test accords with the notion that where the public trust is at issue, "the common good is at stake, and this court is duty-bound to protect the public interest." *Id.*; *see Waiahole I*, 94 Hawai'i at 143, 9 P.3d at 445 ("'Just as private trustees are judicially accountable to their beneficiaries for dispositions of the res, so the legislative and executive branches are judicially accountable for the dispositions of the public trust.... The check and balance of judicial review provides

a level of protection against improvident dissipation of an irreplaceable res.'") (quoting *Arizona v. Cent. for Law in Pub. Interest v. Hassell*, 172 Ariz. 356, 837 P.2d 158, 168–69 (App.1991)).

This standing formulation for a public trust claim is supported by *Waiahole I*, which cites with approval *National Audubon Society v. Superior Court of Alpine County*, 33 Cal.3d 419, 189 Cal.Rptr. 346, 658 P.2d 709 (1983), which held that "any member of the general public has standing to raise a claim of harm to the public trust."[11] 189 Cal.Rptr. 346, 658 P.2d at 717 n. 11; *see Waiahole I*, 94 Hawai'i at 140, 9 P.3d at 452; *see also In re 'Iao*, 128 Hawai'i at 282, 287 P.3d at 183 (Acoba, J., concurring). This *Audubon* holding, that "any member of the general public has standing to raise a claim of harm to the public trust[,]" *see Audubon*, 189 Cal.Rptr. 346, 658 P.2d at 717 n. 11, would support jurisdiction over the appeal pursuant to HRS § 91–14(a).

In the instant case, KOH is an organization whose directors are members of the public. KOH asserts that it will be adversely "affected by potential harm to the public trust[,]" *In re 'Iao*, 128 Hawai'i at 281, 287 P.3d at 182 (Acoba, J., concurring), as a result of the construction allowed to take place at the summit of Haleakalā, pursuant to the CDUP. Accordingly, KOH should have standing to bring a claim to enforce the public trust. KOH was entitled to a contested case hearing because such a hearing was mandated by the Hawai'i Constitution.

## VII.

### A.

Finally, it should be noted that BLNR's grant of the permit prior to holding a contested case hearing was improper, because, as KOH alleged, BLNR "put[ ] the cart before the horse." To reiterate, on December 1, 2010, BLNR approved the CDUA and granted a permit to UH. Only after granting the permit did BLNR determine that it would hold a contested case hearing as requested by KOH.

UH argued in its briefs that under HAR § 13–5–34, a contested case hearing need not be held before a permit is approved, because "[t]he aggrieved appellant or person who has demonstrating standing to contest the board action may request a contested case hearing . . . [,]" and no board "action" took place until the decision on the permit. This reading of the regulation would undermine the statutory definition of a contested case hearing, however, which is a proceeding in which "the legal rights, duties, or privileges of specific parties" are determined. HRS § 91–1(6).

For example, in this case, once the permit was granted, it is not clear what purpose a "contested case hearing" on the permit would serve, because "the legal rights, duties, or privileges" of the parties had already been determined. *See id.* As KOH argued, there is nothing in BLNR's rules that would provide for a revocation of the permit in the event that KOH prevailed at the contested case hearing. Effectively, any grant of a contested case hearing was rendered meaningless as soon as BLNR made the decision to grant the CDUP, because the grant of the permit authorized construction to begin.

When KOH first appealed this case to the court, UH and BLNR urged that KOH had not yet exhausted its administrative remedies and that the claim was unripe because BLNR had not rendered a decision on KOH's request for a contested case hearing. However, even in the event that there was a contested case hearing (as was eventually granted by BLNR in this case) and KOH prevailed at that hearing, BLNR and UH did not make clear how the ultimate outcome would be any different, because BLNR had already granted the CDUP. Hence, BLNR's grant of the permit on December 1, 2010 was

---

11. In *Audubon*, the California supreme court stated that "[j]udicial decisions . . . have greatly expanded the right of a member of the public to sue as a taxpayer or private attorney general." 658 P.2d at 716 n. 11. According to the court in *Audubon*, an earlier California supreme court case, *Marks v. Whitney*, 6 Cal.3d 251, 98 Cal. Rptr. 790, 491 P.2d 374 (1971), "expressly held that any member of the general public has standing to raise a claim of harm to the public trust." *Id.* Thus, the *Audubon* court concluded that the plaintiffs in that case had standing to sue to protect the public trust. *Id.*

an "effective denial" of the contested case hearing, reviewable by the court.

### B.

This case illustrates precisely why this court has taken a functional approach to what can be considered a contested case hearing for purposes of judicial review, consistent with the policy of "favoring judicial review of administrative actions." *Alakai Na Keiki, Inc. v. Matayoshi*, 127 Hawai'i 263, 279, 277 P.3d 988, 1004 (2012) (citing *In re Matter of Hawai'i Gov't Emps.' Ass'n Local 152, AFSCME, AFL–CIO*, 63 Haw. 85, 87, 621 P.2d 361, 363 (1980)) (citation omitted). The legislature did not define "contested case" with respect to the agency's classification of a particular proceeding as a "contested case", but instead defined the term with respect to the result. Thus, "it must be the substance of the agency proceeding, not its form, that controls." *Kaniakapupu v. Land Use Comm'n*, 111 Hawai'i 124, 143, 139 P.3d 712, 731 (2006) (Acoba J., dissenting, joined by Duffy, J.). In other words, "[t]he controlling principle is not the label accorded the motion or proceeding, but the effect of the agency's decision." *Id.*

Instead of requiring an agency to characterize a particular action as a decision in a contested case hearing, as discussed, we instead ask whether the unfavorable agency action "determined the rights, duties, and privileges of specific parties", *PASH*, 79 Hawai'i at 431, 903 P.2d at 1252 (internal quotation marks and citations omitted); an inquiry that reflects the language of HRS § 91–1(5), *see Puna Geothermal*, 77 Hawai'i at 67, 881 P.2d at 1213 (citing HRS § 91–1(5)); *see also Kaleikini*, 124 Hawai'i at 47, 237 P.3d at 1107 (Acoba, J., concurring) (concluding that a specific "procedural vehicle" is not required under HRS Chapter 91 as a prerequisite to a contested case hearing). In addition, the agency's action must also represent a "final decision and order, or a preliminary ruling such that deferral of review would deprive the claimant of adequate relief[.]" *PASH*, 79 Hawai'i at 431, 903 P.2d at 1252 (internal quotation marks omitted).

As established, *supra*, the unfavorable agency action, in this case the grant of the permit, "determined the rights, duties, and privileges of specific parties." *Id.* The contested case hearing currently held by BLNR will not be deciding any legal rights, duties, or privileges, because those rights and privileges were already ruled on pursuant to BLNR's December 1, 2010 decision to grant UH's CDUP application. Any post hoc rationale by the agency to justify its earlier decision will not constitute a determination of UH's legal rights or privileges.

Moreover, for all the reasons described above, this action was a ruling for which "deferral of review would deprive the claimant of adequate relief[.]" *PASH*, 79 Hawai'i at 431, 903 P.2d at 1252 (internal quotation marks omitted). The ostensible effect of the permit was to authorize UH to begin construction.

Thus, in accordance with the presumption of appellate review over agency actions, *see Alakai Na Keiki, Inc.*, 127 Hawai'i at 263, 277 P.3d at 1004, and the definition of "contested case" in HRS § 91–1(5), the court had jurisdiction to review BLNR's grant of the CDUP application after its December 1, 2010 hearing.

### VIII.

Based on the foregoing, in my view, the Hawai'i Constitution provides a basis for a contested case hearing, through the Constitution's protection of native Hawaiian rights, due process protections, and protection of the public trust. Thus, in the instant case, KOH satisfies the requirement that a contested case hearing is required by law through constitutional means. Additionally, under the circumstances, BLNR's initial grant of the permit determined the rights of the parties, rendering any subsequent so-called "contested case hearing" meaningless.