**Electronically Filed**
**Supreme Court**
**SCWC-22-0000516**
**05-SEP-2025**
**09:50 AM**
**Dkt. 52 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

SIERRA CLUB,
Petitioner/Appellant-Appellee/Cross-Appellee,

vs.

BOARD OF LAND AND NATURAL RESOURCES,
Respondent/Appellee-Appellee/Cross-Appellee,

and

COUNTY OF MAUI,
Respondent/Appellee-Appellee/Cross-Appellant,

and

ALEXANDER AND BALDWIN, INC.;
and EAST MAUI IRRIGATION COMPANY, LLC,
Respondents/Appellees-Appellants/Cross-Appellees.
(CAAP-22-0000516; CASE NO. 1CCV-20-0001541)

--------------------------------------------------------------

SIERRA CLUB,
Petitioner/Appellant-Appellee,

vs.

BOARD OF LAND AND NATURAL RESOURCES,
Respondent/Appellee-Appellant,

and

ALEXANDER AND BALDWIN, INC.; EAST MAUI
IRRIGATION COMPANY, LLC; and COUNTY OF MAUI,
Respondents/Appellees-Appellees.
(CAAP-22-0000519; CASE NO. 1CCV-20-0001541)

SCWC-22-0000516

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS

SEPTEMBER 5, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, AND DEVENS, JJ.,
AND CIRCUIT JUDGE MALINAO, IN PLACE OF GINOZA, J., RECUSED

OPINION OF THE COURT BY DEVENS, J.

## I. Introduction

Our case law has long reflected our concern about barriers facing community members seeking meaningful participation in an agency's proceedings and determinations on matters affecting the environment. In this appeal, we consider two main questions: (1) whether petitioner Sierra Club was wrongfully denied a contested case hearing before the Board of Land and Natural Resources (BLNR or Board); and (2) whether the Environmental Court of the First Circuit (Environmental Court) had jurisdiction pursuant to Hawaiʻi Revised Statutes (HRS) 91-14(g) (2012 & Supp. 2019) to review BLNR's proceedings involving a decision to renew several permits after the Board denied Sierra Club a contested case hearing.

We review a November 2020 decision made by BLNR during a public meeting that granted Alexander and Baldwin, Inc.'s and

2

East Maui Irrigation's (EMI) (collectively, A&B) request to "continue" (renew) four revocable permits (RPs) for 2021. The parties do not dispute that before the Board voted to renew the RPs, Sierra Club properly and timely requested a contested case hearing. At the November 2020 public meeting, BLNR denied Sierra Club's hearing request and voted to renew A&B's RPs for 2021. Pursuant to HRS § 171-55 (2011),[1] the renewal re-authorized A&B to continue, for another year, its "temporary occupancy" of state lands and its daily diversion of millions of gallons of fresh water from East Maui's streams into Central Maui.

Sierra Club filed an agency appeal with the Environmental Court pursuant to HRS § 91-14 challenging BLNR's final decision and order. Specifically, Sierra Club challenged the Board's decision to renew the four RPs and the Board's denial of Sierra Club's request for a contested case hearing. Sierra Club also requested attorney fees and costs.

---

[1]     HRS § 171-55 provided in relevant part:

> the board of land and natural resources may issue permits for the temporary occupancy of state lands or an interest therein on a month-to-month basis by direct negotiation without public auction, under conditions and rent which will serve the best interests of the State, subject, however, to those restrictions as may from time to time be expressly imposed by the board. A permit on a month-to-month basis may continue for a period not to exceed one year from the date of its issuance; provided that the board may allow the permit to continue on a month-to-month basis for additional one year periods.

The Environmental Court held that Sierra Club was entitled to a contested case hearing before BLNR voted to renew the RPs. The court vacated the invalid RPs and remanded the case to BLNR for a contested case hearing. Recognizing the potential for "unintended consequences and chaos" that could result from vacating the RPs, which authorized the diversion of fresh water from East Maui's streams to meet Central Maui's needs while the case was on remand, the Environmental Court stayed its vacatur order. After inviting and receiving input from the parties, the Environmental Court temporarily modified the permits and allowed A&B to continue its water diversion but at a reduced rate of up to 25 million gallons of fresh water per day (mgd) until BLNR concluded its proceedings on remand. The Environmental Court also awarded Sierra Club attorney fees and costs pursuant to the private attorney general doctrine.

A&B and BLNR appealed to the Intermediate Court of Appeals (ICA), which vacated in part the Environmental Court's decision and orders. The ICA (majority and dissent) held that Sierra Club's constitutionally protected property interest in a clean and healthful environment, implicated in BLNR's renewal of A&B's RPs, was defined by laws of environmental quality HRS § 171-55 and HRS Chapter 343 (the Hawai'i Environmental Policy Act) but not by HRS Chapter 205A, the Coastal Zone Management Act (CZMA). And in a split decision, the ICA majority held that the

4

Environmental Court only had subject matter jurisdiction over part of Sierra Club's appeal, namely its appeal from BLNR's denial of Sierra Club's request for a contested case hearing. The ICA majority held that constitutional due process did not entitle Sierra Club to a contested case under the circumstances presented. The majority further held that the Environmental Court did not have jurisdiction over Sierra Club's appeal from BLNR's decision to renew the RPs, and therefore, the Environmental Court erred in modifying the RPs' conditions pending remand. Given the majority's conclusion that Sierra Club was not entitled to a contested case hearing and the Environmental Court lacked jurisdiction to modify the RPs, the majority vacated the orders awarding attorney fees and costs to Sierra Club.

On certiorari, Sierra Club raises several primary contentions. First, it asserts that the ICA erred in finding that Sierra Club's constitutionally protected property interest, implicated in the RPs' renewal, was not defined by HRS Chapter 205A. Second, Sierra Club argues that BLNR's decision to renew the RPs granted legal rights and privileges to A&B, and that under the facts and circumstances, due process protections entitled Sierra Club to a contested case hearing. Sierra Club contends that pursuant to our case law, the Environmental Court had HRS § 91-14 jurisdiction over Sierra Club's appeal from

BLNR's decision to renew A&B's RPs. Sierra Club further argues that the Environmental Court had statutory and equitable authority to temporarily modify the RPs pending remand to BLNR. Finally, Sierra Club asserts that the ICA majority erroneously vacated the award of attorney fees and costs. A&B and BLNR take the counter position to each of Sierra Club's contentions, other than the Environmental Court's award of attorney fees and costs, which only A&B and the County of Maui (County) dispute.

We agree with Sierra Club. On this record, we hold that BLNR's decision to renew the RPs implicated Sierra Club's constitutional right to a clean and healthful environment as defined by HRS Chapter 205A. We further conclude that constitutional due process entitled Sierra Club to a contested case hearing before the Board voted to renew the RPs. We respectfully disagree with the ICA majority's analysis of the Environmental Court's subject matter jurisdiction, and affirm that an agency decision made after the wrongful denial of a contested case hearing, which effectively ends the proceeding, is a final decision and order within the meaning of HRS § 91-14. Thus, we hold the Environmental Court had HRS § 91-14 jurisdiction over not only BLNR's denial of Sierra Club's request for a contested case hearing, but also BLNR's subsequent decision to renew the RPs. We further hold that having jurisdiction over the matter, the Environmental Court had

6

statutory and equitable authority to modify the RPs.  The Environmental Court properly exercised its statutory and equitable powers to temporarily modify the maximum cap on water diversion pending resolution of BLNR's proceedings on remand.  We also affirm the Environmental Court's award of attorney fees and costs to Sierra Club.

## II.  Background

### A.  Factual Background

For over a century, under various arrangements with the Territory and then the State, A&B has diverted water from East Maui's streams for use in sugar plantation and other operations in Central Maui.

In 1999, BLNR issued four RPs, numbers S-7263, S-7264, S-7265, and S-7266 pursuant to HRS § 171-55 (1993), that were effective July 1, 2000 and continued on a month-to-month basis for a period not to exceed one year unless the Board allowed the permit to continue for additional one year periods.  HRS § 171-55.  The RPs gave A&B the "[r]ight, privilege, and authority for the development, diversion, and use of water" from the Honomanū, Huelo, Keʻanae, and Nāhiku watersheds in East Maui.  The Honomanū, Huelo, and Keʻanae RPs were first assigned to A&B, with the Nāhiku RP assigned to EMI.

In May 2001, A&B applied to BLNR for a thirty-year water lease to divert water from the East Maui watersheds.  At a

May 25, 2001 public meeting, BLNR considered the water lease request, which included a request to continue the issuance of the RPs pending the lease application outcome, and received testimony. At the meeting, a Maui community group requested and was granted a contested case hearing.[2] BLNR deferred its decision on the long-term lease but granted the RPs for the year.

In May 2002, BLNR renewed A&B's four RPs for the East Maui stream diversions and affirmed "its intention to preserve the status quo until the resolution of the contested case" on A&B's long-term lease application.

BLNR has renewed those four "temporary" RPs continuously since 2002.[3] The RPs have allowed A&B and EMI to utilize approximately 33,000 acres of state forest reserve land and divert millions of gallons of fresh water per day from East Maui's streams. BLNR's repeated renewal of A&B's RPs have, as a matter of course, been granted each year for over twenty years.[4] BLNR's annual renewals of the temporary permits appear to have given A&B a de facto two-decade lease.

_____

[2]    See Maui Tomorrow v. State, Bd. of Land & Nat. Res., 110 Hawai'i 234, 237, 131 P.3d 517, 520 (2006).

[3]    See Carmichael v. Bd. of Land & Nat. Res., 150 Hawai'i 547, 555, 506 P.3d 211, 219 (2022).

[4]    Id. at 554-55, 506 P.3d at 218-19.

**B.    BLNR Proceedings for A&B's 2019 and 2020 RPs**

At a November 2018 public meeting held by BLNR, A&B's four RPs came up again for renewal for 2019.  As part of the proceedings, Sierra Club requested a contested case hearing before BLNR made a decision on the RPs.  The Board denied Sierra Club's hearing request and proceeded to vote to renew the four RPs for 2019.

Subsequently, at an October 2019 public meeting, A&B's request to renew the four RPs for 2020 was again on BLNR's agenda.  BLNR accepted public comments pertaining to the renewal request.  Sierra Club once again requested a contested case hearing, which the Board denied and then voted to approve the RPs for 2020.

We take judicial notice that Sierra Club initiated a separate action in circuit court against BLNR, A&B, and the County relating to BLNR's renewal of A&B's RPs for 2019 and 2020, which sought declaratory and injunctive relief.[5]  A bench trial was held in that case.

**C.    BLNR Proceedings for A&B's 2021 RPs**

In October 2020, A&B requested another renewal of the same four RPs for 2021.

---

[5]    See JEFS No. 1CC191000019, the Honorable Jeffrey P. Crabtree presiding. This case was appealed to the ICA; see CAAP-22-0000063.

On November 13, 2020, BLNR held a public meeting on A&B's renewal request. The agency's staff recommended new conditions be applied to the RPs for 2021, in addition to continuing the conditions from the 2020 RPs. Pursuant to the 2020 conditions, A&B had provided BLNR with quarterly data on actual water usage.

Before the public meeting, Sierra Club submitted a written petition requesting a contested case hearing on A&B's renewal request. During the meeting, BLNR considered Sierra Club's hearing request, but after a closed-door Executive Session, the Board reconvened and denied Sierra Club a contested case hearing. The Board then took public comment and subsequently voted to renew the RPs for 2021. The Board's renewal of the RPs included continuing the conditions from the 2020 RPs but also added several new conditions for 2021.

## D.  Environmental Court Proceedings

Pursuant to HRS § 91-14(g), Sierra Club appealed BLNR's decision renewing A&B's RPs for 2021 and BLNR's denial of Sierra Club's request for a contested case hearing to the Environmental Court.[6] Sierra Club argued that a contested case hearing was required on the 2021 RPs' conditions because there was new evidence and changed circumstances, including data provided by A&B on actual rather than estimated water use. Further, Sierra

---

[6]     The Honorable Jeffrey P. Crabtree presided.

10

Club cited to the new conditions BLNR imposed on the 2021 RPs, including a redefinition of water waste as excluding evaporation and system losses, and a daily water diversion rate of 45 mgd. Sierra Club contended these and other RP conditions required further examination and scrutiny in a contested case hearing prior to BLNR's decision to renew the RPs. The County intervened in opposition to Sierra Club.

As to the issue of whether a contested case hearing was required by law, Sierra Club asserted a constitutionally protected property interest in a clean and healthful environment as defined by HRS § 171-55, HRS Chapter 205A, HRS Chapter 343, and the public trust in fresh water, implicated in BLNR's renewal of A&B's RPs. It argued that a contested case hearing was required by law prior to BLNR's renewal of the RPs, and because BLNR decided to renew the RPs after violating Sierra Club's due process rights, the RPs should be vacated.

A&B countered that Sierra Club did not have a constitutionally protected property interest implicated by the RP renewals. And even if it did, Sierra Club's administrative challenge to the 2021 RPs was substantially similar to their previous challenge of BLNR's renewal of the RPs for 2019 and 2020 in the bench trial before the circuit court. While the risk of erroneous deprivation of Sierra Club's property interest was low, A&B asserted, the burden on the government of a

duplicative procedure would be significant. Therefore, a contested case was not required by law as there was no due process violation.

BLNR similarly argued that a contested case hearing was not required by statute, rule, or constitutional due process. BLNR contended that its authority to continue the permits for one-year periods arose from HRS § 171-55 which was a "statute relating to land management, not environmental quality." But assuming Sierra Club did have a constitutionally protected property interest in BLNR's renewal of the RPs, BLNR argued, due process did not require a contested case hearing, as the bench trial on the 2019 and 2020 RPs, as well as Sierra Club's participation in the November 2020 public meeting, sufficiently safeguarded that interest. Further, BLNR asserted that it had an interest in avoiding duplicative proceedings.

The County joined in A&B and BLNR's arguments, and also asserted that suspending water diversion rates and conditions during a contested case hearing would burden government by jeopardizing the protection of water resources for domestic use. In reply to appellees, Sierra Club reiterated arguments made in its opening brief.

The Environmental Court filed an Interim Decision on Appeal in May 2021, concluding that BLNR's denial of Sierra Club's request for a contested case hearing violated Sierra Club's due

process rights.  Pursuant to HRS § 91-14, the court vacated the RPs, but stayed its order, and reserved jurisdiction to modify the RPs pending remand of the case to BLNR.  Recognizing the potential chaos immediate vacatur of the invalid RPs could bring to Central Maui water users, the court invited the parties to provide input on whether and how the court might modify the RPs' conditions to mitigate such potential risks.  The court also ordered BLNR to hold a contested case hearing on the RPs as soon as practicable.[7]

Subsequently, after receiving input from the parties and reiterating that BLNR "violated Sierra Club's constitutional rights by refusing to hold a contested case hearing on those permits[,]" the Environmental Court issued its July 30, 2021 Order Modifying Permits.  Pursuant to its authority under HRS § 91-14, HRS § 604A-2(b) (2016), and the state constitution, the court modified the RPs for 2021, allowing them to remain in effect, but limiting A&B's water diversion to no more than 25 mgd (averaged monthly) until the conclusion of the contested case hearing.

---

[7]    We take judicial notice that a contested case hearing on the renewals of A&B's RPs for 2021 and 2022 was subsequently conducted primarily in December 2021 by then-DLNR-Chair, Suzanne Case (Case), who appointed herself as the hearing officer.  See DLNR CCH-LD-21-01.  At the end of June 2022, Case issued BLNR's Findings of Fact, Conclusions of Law, and Decision and Order.  After primary and secondary appeal of that contested case Decision and Order, the case is on remand to the Environmental Court for further proceedings.  We take judicial notice of JEFS No. 1CCV-22-0000794; CAAP-24-82; and SCWC-24-82 (cert. rejected).

On August 23, 2021, the Environmental Court entered its Findings of Fact, Conclusions of Law and Order.  Relevant here and consistent with its interim rulings, the court found that Sierra Club and its members had demonstrated a constitutional right to a clean and healthful environment as defined by HRS Chapter 205A, in addition to HRS § 171-55 and HRS Chapter 343, which was adversely affected by BLNR's renewal of A&B's RPs for 2021, authorizing stream diversions of 45 mgd with "inadequate permit conditions."  Further, the Environmental Court determined that Sierra Club's constitutional due process rights were violated, as a contested case hearing was required before BLNR voted to renew the RPs.  The court stayed its Interim Decision vacating the RPs, and invoking its equitable powers, the court temporarily limited the total amount of water diverted to 25 mgd (averaged monthly), pending BLNR's completion of the contested case hearing on A&B's renewal request or further court order.

The Environmental Court also retained limited jurisdiction to further modify the RPs if necessary.  Upon request by A&B in November 2021, the Environmental Court extended the end date of the 2021 RPs to May 1, 2022, or the date on which BLNR rendered a decision on the continuation of the RPs for 2022, or on further order of the court.

The Environmental Court also awarded Sierra Club attorney fees and costs pursuant to the private attorney general

14

doctrine.

On July 27, 2022, final judgment was entered.

**E.    ICA Proceedings**

A&B and BLNR appealed the Environmental Court's decision and orders to the ICA.[8]

A&B, BLNR, and the County argued that the Environmental Court abused its discretion in finding a contested case hearing was required before BLNR renewed the RPs.  First, A&B reasserted that Sierra Club had no constitutionally protected property interest in the matter before BLNR.  Second, even if it did, A&B and BLNR contended that Sierra Club had received sufficient procedure in the bench trial on the 2019 and 2020 RPs and the November 2020 public meeting on the 2021 RPs.  BLNR further challenged the Environmental Court's order and authority remanding the case to BLNR for a contested case hearing while also allowing the RPs to remain in effect with the modifications made by the court.  Finally, A&B and the County argued that the Environmental Court abused its discretion when it awarded Sierra Club attorney fees and costs.[9]

In response, Sierra Club repeated the contentions it made

---

[8]    The ICA consolidated the appeals.

[9]    In its cross-appeal, the County also argued that if Sierra Club was entitled to attorney fees and costs, the Environmental Court abused its discretion in ordering the County to pay 5% of the total attorney fees.  This issue is not before this court on certiorari.

to the Environmental Court regarding its due process right to a contested case hearing before the Board voted to renew the RPs. Sierra Club further argued that the Environmental Court properly exercised its statutory and equitable authority in ordering BLNR to hold a contested case hearing and in modifying the RPs pending resolution of BLNR's proceedings on remand. Sierra Club also asserted that the Environmental Court did not abuse its discretion in awarding attorney fees and costs.

The ICA held oral argument and published its opinion. Sierra Club v. Bd. of Land & Nat. Res. (Sierra Club I), 154 Hawai'i 264, 550 P.3d 230 (App. 2024). First, the ICA concluded that the issues presented on appeal, despite the temporary nature of the permits, were not moot, as the "capable of repetition, yet evading review" and "public interest" exceptions to the mootness doctrine applied.[10] Id. at 276, 550 P.3d at 242.

The ICA further determined that Sierra Club had a constitutionally protected property interest in a clean and healthful environment based on our state's constitution, article XI, section 9, as defined by environmental quality laws HRS § 171-55 and HRS Chapter 343, but not by HRS Chapter 205A.[11] Id.

---

[10]  Carmichael was published in March 2022, after BLNR's November 2020 RP renewal. Here, the ICA acknowledged Carmichael's mootness analysis and exceptions. See 150 Hawai'i at 560-62, 506 P.3d at 224-26.

[11]  The ICA also alluded to but did not affirmatively decide Sierra Club's contention that it had a property interest arising from article XI, section 1 of the state constitution and the public trust doctrine. This is consistent

16

at 278-80, 550 P.3d at 244-46.  Instead, the ICA held that HRS
Chapter 205A "did not effect [sic] BLNR's authority to continue
the Permits, and thus did not define Sierra Club's members'
constitutional right to a clean and healthful environment in the
matter before BLNR."  Id. at 279, 550 P.3d at 245.

In a split opinion on the remaining issues, the ICA
majority concluded that the Environmental Court erred in
deciding that a contested case hearing was required by law.  Id.
at 285, 550 P.3d at 251.  Under the circumstances of this case,
balancing the minimal procedural protections of Sierra Club's
property interest provided by a contested case hearing against
the burdens on state and county governments imposed by such a
hearing, the majority held that Sierra Club was not denied
constitutional due process by BLNR's denial of a contested case
hearing.  Id. at 283, 550 P.3d at 249.

The majority then held that because the Board's decision to
renew the RPs was not made in a contested case hearing, and due
process did not require a contested case hearing, the
Environmental Court did not have HRS § 91-14(g) appellate
jurisdiction over Sierra Club's appeal of BLNR's renewal of the
RPs.  Id.  The majority reasoned that the Environmental Court's

---

with the Environmental Court's decision not to assess Sierra Club's public
trust claim given the "straightforward" nature of an article XI, section 9
constitutional basis for a contested case hearing on the RPs' renewal.  On
this record, we do not reach Sierra Club's public trust claim.

17

"exclusive jurisdiction" is over appeals from BLNR HRS § 171-55 decisions rendered in contested cases; but here, BLNR's decision to renew the RPs was made during a public meeting, not a contested case hearing. Id. Thus, the majority concluded that because the Environmental Court did not have HRS § 91-14 jurisdiction over the Board's renewal of the RPs, the Environmental Court did not have equitable power to modify the RPs. Id. The majority went further, adding that "[e]ven if the Environmental Court had jurisdiction under HRS § 91-14, the procedure it used to modify BLNR's conditions exceeded its statutory authority" because of the separation of powers and a circuit court's deference to agency fact finding in HRS § 91-14 appellate review. Id. at 283-84, 550 P.3d at 249-50.

Finally, the majority determined that because Sierra Club was not the prevailing party, it had not established the elements for an award of attorney fees and costs pursuant to the private attorney general doctrine. Id. at 285, 550 P.3d at 251.

The ICA dissent disagreed with the majority in noting that due process entitled Sierra Club to a contested case hearing.[12] Id. at 285-87, 550 P.3d at 251-53. The dissent would have also held that the Environmental Court had HRS § 91-14(g) jurisdiction over BLNR's decision to renew the RPs and did not

---

[12]    The Honorable Karen T. Nakasone dissented.

18

exceed its statutory and equitable authority when it modified the RPs.  Id. at 287-89, 550 P.3d at 253-55.  On this basis, the dissent would have affirmed the Environmental Court's award of attorney fees and costs to Sierra Club.  Id. at 286, 550 P.3d at 252.

We accepted Sierra Club's application for certiorari review.

### III.  Standards of Review

### A.  Subject Matter Jurisdiction

"The existence of subject matter jurisdiction is a question of law that is reviewable de novo under the right/wrong standard."  Kilakila 'O Haleakala v. Bd. of Land & Nat. Res., 131 Hawai'i 193, 199, 317 P.3d 27, 33 (2013) (quoting Kaniakapupu v. Land Use Comm'n, 111 Hawai'i 124, 131, 139 P.3d 712, 719 (2006)).

### B.  Appeals from an Agency Decision

> In this secondary appeal, this court applies the standards of HRS § 91-14(g) to determine whether the circuit court decision was right or wrong.  HRS § 91-14(g) (Supp. 2015) provides:
>
> > Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> >
> > (1) In violation of constitutional or statutory provisions; or
> >
> > (2) In excess of the statutory authority or jurisdiction of the agency; or

> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> Further, under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6).

Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawai'i 376, 388, 363 P.3d 224, 236 (2015) (cleaned up).

## C. Statutory Interpretation

The interpretation of a statute is a question of law; review is de novo, and the standard of review is right/wrong. Kimura v. Kamalo, 106 Hawai'i 501, 507, 107 P.3d 430, 436 (2005); Sugarman v. Kapu, 104 Hawai'i 119, 123, 85 P.3d 644, 648 (2004).

## D. Constitutional Law

Questions of constitutional law are reviewed de novo, under the right/wrong standard. Carmichael, 150 Hawai'i at 560, 506 P.3d at 224 (citation and quotation marks omitted).

## E. Award of Attorney Fees and Costs

We review a court's award of attorney fees and costs under the abuse of discretion standard. Goo v. Arakawa, 132 Hawai'i 304, 318, 321 P.3d 655, 669 (2014). Abuse of discretion occurs

when a trial court clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party.  Maui Tomorrow, 110 Hawai'i at 242, 131 P.3d at 25.  We review de novo whether a trial court abused its discretion in determining whether a party has satisfied the three factors of the private attorney general doctrine.  Goo, 132 Hawai'i at 318, 321 P.3d at 669.

## IV.  Discussion

### A.  Sierra Club was entitled to a contested case hearing before BLNR voted to renew A&B's RPs for 2021.

The Environmental Court concluded that a contested case hearing was required by Sierra Club's constitutionally protected right to a clean and healthful environment as defined, inter alia, by HRS Chapter 205A.  See Haw. Const., art. XI, § 9; HRS § 171-55; HRS Chapter 205A; HRS Chapter 343; HRS § 91-1 (2012 & Supp. 2017), and HRS § 91-14(a) (2012).

The ICA disagreed, holding that while HRS Chapter 205A was a law relating to environmental quality, it "did not provide authority for BLNR's continuation of [the RPs]"; and because Chapter 205A "did not effect [sic] BLNR's authority to continue the [RPs], [it] thus did not define Sierra Club's members' constitutional right to a clean and healthful environment in the matter before BLNR."  Sierra Club I, 154 Hawai'i at 279, 550 P.3d at 245.  The ICA majority then held that while Sierra Club had a

21

constitutionally protected property interest defined by HRS §
171-55 and HRS Chapter 343, under the circumstances of this
case, constitutional due process did not require a contested
case hearing.  Id. at 280, 285, 550 P.3d at 246, 251.

In this secondary appeal, we apply the standards of HRS §
91-14(g) in reviewing BLNR's decision and to determine whether
the Environmental Court's decision was right or wrong.  Mauna
Kea Anaina Hou, 136 Hawai'i at 388, 363 P.3d at 236.  We affirm
the ICA's conclusion that Sierra Club had a property interest in
a clean and healthful environment as defined by HRS § 171-55 and
HRS Chapter 343, but we hold that the ICA erred in reversing the
Environmental Court's determination that HRS Chapter 205A also
defined Sierra Club's constitutionally protected property
interest in the matter before the Board.  Further, we hold that
the ICA majority erred in determining that constitutional due
process did not entitle Sierra Club to a contested case hearing
before the Board decided to renew the 2021 RPs, and we affirm
the Environmental Court on this issue.

1. **Sierra Club's constitutionally protected property
   right in a clean and healthful environment was defined
   by HRS Chapter 205A.**

Whether a constitutional due process right to a contested
case hearing exists is determined through application of a two-
step analysis.  Flores v. Bd. of Land & Nat. Res., 143 Hawai'i
114, 125, 424 P.3d 469, 480 (2018).  First, we consider if the

22

particular interest that the claimant seeks to protect by a hearing is "property" within the meaning of the due process clauses of the federal and state constitutions. Aguiar v. Hawaii Hous. Auth., 55 Haw. 478, 495, 522 P.2d 1255, 1266 (1974). Second, if the interest is "property," we determine what specific procedures are required to protect that interest. Id.

Here, Sierra Club argues that its constitutionally protected property interest at issue in BLNR's renewal of A&B's RPs arises from article XI, section 9 of our state constitution as defined by laws of environmental quality, including HRS Chapter 205A.

Article XI, section 9 of the Hawai'i Constitution provides, in part, that "[e]ach person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources." Haw. Const., Art. XI, § 9. In analyzing HRS § 171-55 as a law related to environmental quality defining Sierra Club's constitutionally protected property interest in BLNR's decision to renew the RPs, the ICA correctly noted that HRS § 171-55 requires the Board to permit temporary occupancy and use of state lands "under conditions and rent which will serve the best interests of the State[.]" The previous RP conditions that

continued with the renewal of A&B's RPs for 2021 directly related to conservation and protection of our state's fresh water resources.

We review the interpretation of a statute de novo. Based on a plain reading of HRS Chapter 205A, as well as insights from the legislature's 1993 amendment to the CZMA, we reverse the ICA and affirm the Environmental Court in concluding that Chapter 205A applies in defining Sierra Club's due process right implicated in BLNR's renewal of these land use and water diversion RPs.

HRS § 205A-4(b) (2017) provides: "The objectives and policies of this chapter and any guidelines enacted by the legislature shall be binding upon actions within the coastal zone management area by all agencies, within the scope of their authority." Importantly, HRS § 205A-1 (2017) clearly defines the "coastal zone management area" as "all lands of the State and the area extending seaward from the shoreline to the limit of the State's police power and management authority, including the United States territorial sea." HRS § 205A-1 (emphasis added).

In 1993, our legislature recognized the "unique" problems of maintaining the environmental quality of our coastal areas, making it "difficult to distinguish coastal from noncoastal activities." 1993 Haw. Sess. Laws Act 91, § 1 at 123.

Therefore, our legislature amended its definition of the "coastal zone management area"--removing the law's prior exclusion of state forest reserves from this area--for the following reasons:

> The legislature finds that the problems of maintaining the quality of Hawaii's coastal areas are unique. Because the State is made up of small islands, <u>it is difficult to distinguish</u> <u>coastal from noncoastal activities.</u> <u>Human and nonhuman activities conducted in inland forest reserves can result in</u> erosion of public lands, <u>nonpoint source water pollution, and siltation in coastal areas.</u>
>     The legislature finds that there is an urgent need to <u>develop a comprehensive approach to protecting Hawaii's coastal areas from nonpoint source pollution,</u> siltation, and erosion. Extending the inland boundaries by <u>removing the existing exclusion of state forest reserves from the coastal zone management area would allow for greater control over these impacts.</u>

1993 Haw. Sess. Laws Act 91, § 1 at 123 (emphases added).

This "mauka to makai" connection of authorized upland actions with coastal consequences is created by the sweep of our islands' streams. Our legislature recognized this in its re-definition of HRS § 205A-4(b)'s "coastal zone management area" as including "all lands of the State." The mauka to makai interconnection is further supported by HRS § 205A-2 (2017), which sets forth the objectives and policies applicable to "all parts of this chapter." HRS § 205A-2(a). One of these policies directs agencies to "[e]xercise an overall conservation ethic" and "[m]inimize disruption or degradation of coastal water ecosystems by effective regulation of stream diversions, channelization, and similar land and water uses, recognizing

competing water needs[.]" HRS § 205A-2(c)(4)(A), (D). Further, the statute describes coastal ecosystem policy as promoting "water quantity and quality planning and management practices that reflect the tolerance of fresh water and marine ecosystems and maintain and enhance water quality[.]" HRS § 205A-2(c)(4)(E).

BLNR and the agency's staff repeatedly recognized our islands' mauka to makai hydrological systems in their review of the Commission on Water Resource Management's (CWRM) research on streamflow and biological ecosystems in the East Maui watershed. The record on appeal here includes CWRM's reports from 2008, 2009, and 2020 on East Maui stream complexes affected by water diversions permitted by BLNR. In its submittal of comments for the November 2020 BLNR public meeting, Department of Land and Natural Resources' (DLNR) Division of Aquatic Resources staff ranked at least one stream within the Huelo RP area as a "high" priority for restoration.

The ICA correctly noted that HRS § 205A-4(b) binds agencies, including BLNR, to the objectives and policies of HRS Chapter 205A. But it is clear that the subject RPs which BLNR renewed pursuant to its HRS § 171-55 authority were for inland forest diversion of fresh water out of East Maui's streams, potentially affecting the hydrological systems and ecological quality of coastal environs. Therefore, while we affirm the

ICA's holding that Sierra Club's constitutionally protected property interest in the matter before BLNR was defined by HRS § 171-55 and HRS Chapter 343, we reverse the ICA's exclusion of HRS Chapter 205A as a basis for that property interest.  We hold that HRS Chapter 205A also defined Sierra Club's constitutionally protected property interest in a clean and healthful environment in the matter before BLNR.

2.    **Sierra Club was entitled to a contested case hearing.**

Sierra Club argues that the ICA majority erred in holding a contested case hearing was not required by law before BLNR voted to renew A&B's RPs for 2021.

"We have long recognized that constitutional due process protections mandate a hearing whenever the claimant seeks to protect a property interest, in other words, a benefit to which the claimant is legitimately entitled."  In re Application of Maui Elec. Co., Ltd. (MECO), 141 Hawai'i 249, 260, 408 P.3d 1, 12 (2017) (cleaned up).  See also Pele Def. Fund v. Puna Geothermal Venture, 77 Hawai'i 64, 68, 881 P.2d 1210, 1214 (1994).  If a party demonstrates a constitutionally protected property interest affected by a government agency's decision, that party has a due process right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  Sandy Beach Def. Fund v. City Council of City & Cnty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989).

A contested case is a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for an agency hearing. HRS § 91-1. A contested case hearing may be required by rule, statute, or constitutional due process. Mauna Kea Anaina Hou, 136 Hawai'i at 390, 363 P.3d at 238. As Sierra Club has not asserted a right to a hearing required by rule or statute, we review de novo the constitutional issue relating to the deprivation of due process under the right/wrong standard.

In Sandy Beach, this court reiterated that determining what specific procedures are required to protect a party's due process rights involves the balancing of three factors: (1) the private interest affected; (2) the risk of erroneous deprivation of that interest through the procedures actually used and the protective value of additional or alternative procedures; and (3) the government's interest, which includes the burden created by more procedure than what was given. 70 Haw. at 378, 773 P.2d at 261.

As discussed above, and affirmed by the ICA, Sierra Club had a property interest protected by constitutional due process. In balancing the remaining two factors, we affirm the Environmental Court's conclusion that Sierra Club's due process rights were prejudiced with BLNR's renewal of the RPs without a contested case hearing.

28

> a. **The bench trial on the 2019 and 2020 RPs and BLNR's November 2020 public meeting on the RPs did not provide a sufficient safeguard and procedural protection of Sierra Club's constitutionally protected property interest from erroneous deprivation.**

For due process to be satisfied, an entitled party must have notice and a meaningful opportunity to be heard. Sandy Beach, 70 Haw. at 378, 773 P.3d at 261.

As BLNR and A&B correctly point out, this court has held that due process is not "fixed" but is "flexible and calls for such procedural protections as the particular situation demands." Id. And in this particular situation, they argue, Sierra Club's participation in the trial challenging BLNR's renewal of the RPs for 2019 and 2020, as well as their participation in the general public commentary at the November 13, 2020 public meeting provided sufficient procedure to safeguard Sierra Club's property interest from erroneous deprivation. The ICA majority held that, under these circumstances, a contested case hearing was not required by law because such a hearing would have provided "minimal additional protection" of Sierra Club's constitutionally protected property interest. Sierra Club I, 154 Hawai'i at 283, 550 P.3d at 249. We respectfully disagree.

Pursuant to HRS § 91-1, a contested case is defined as "a proceeding in which the legal rights, duties, or privileges of

specific parties are required by law to be determined after an opportunity for agency hearing."  As this court has noted:

> A contested case hearing is similar in many respects to a trial before a judge: the parties have the right to present evidence, testimony is taken under oath, and witnesses are subject to cross-examination.  It provides a high level of procedural fairness and protections to ensure that decisions are made based on a factual record that is developed through a rigorous adversarial process.

Mauna Kea Anaina Hou, 136 Hawai'i at 380, 363 P.3d at 228.

According to DLNR's own rules, a contested case hearing is an adversarial judicial process, akin to a trial that permits cross examination.  In contrast to a public meeting, it promotes in-depth challenges of assertions and mere arguments, and it facilitates the rejection of supposition or conjecture in favor of presenting data and evidence and testing of its veracity and methodologies than mere discussion and general commentary affords.  See Hawai'i Administrative Rules (HAR) §§ 13-1-32 (eff. 2009) ("Conduct of Hearing"); 13-1-32.3 (eff. 2009) ("Discovery"); 13-1-33 (eff. 2009) ("Procedure for Witnesses"), for example; see also DJ v. CJ, 147 Hawai'i 2, 19, 464 P.3d 790, 807 (2020) ("Cross-examination is the 'greatest legal engine ever invented for the discovery of truth.'").  Such adversarial testing of evidence and challenging of witnesses simply does not occur in a public meeting calling for commentary.

We hold that in assessing the second Sandy Beach factor, the risk of erroneous deprivation of Sierra Club's property

interest through the procedures that were used was high.

First, given the importance of the water resources at issue, and Sierra Club's property interests at stake, a BLNR public hearing was an inadequate safeguard and fell short of a contested case hearing's meaningful opportunity to be heard. HAR § 13-1-2(a) (eff. 2009) defines a BLNR "public hearing" as "a hearing required by law in which members of the public generally may comment upon the subject matter of the hearing." At the November 13, 2020 public meeting, Sierra Club members and counsel did provide general comment along with DLNR staff, A&B representatives, and members of the public. However, on this record, that public hearing did not constitute an opportunity to be heard in a "meaningful manner."

Second, the Environmental Court determined that Sierra Club was persuasive in that changed circumstances and new evidence arising from the renewal process for the 2021 RPs "[were] relevant and [were] not insignificant." The court highlighted relevant "new evidence," including the agency's Division of Aquatic Resources recommending that "restoring four more of the streams should be a high priorty[;]" and that recent reports from A&B showed actual water usage that contrasted with amounts of estimated water use. Further, the Environmental Court noted that "[a] new issue of defining 'waste' to expressly exclude system losses and evaporation was also up for consideration with

31

the permits at issue."

The contrast between the continuing condition from the prior RPs imposed on the 2021 RPs that "[t]here shall be no waste of water[; and all] water diverted shall be put to beneficial agricultural use or municipal use," with BLNR's new condition that "[s]ystem losses and evaporation shall not be considered as a waste of water," bears examination, as it is unclear from the record how water waste for 2020 was no longer considered water waste for 2021. This change in the definition of water waste alone weighs in favor of additional and meaningful process subsequent to the bench trial relating to the 2019 and 2020 RPs, in contrast to the procedure actually afforded Sierra Club at the November 2020 public meeting, which did not allow for the examination of any of the fourteen "testifying" witnesses. In addition to the witnesses, the ICA noted "over 13,000 pages of material" related to the permits was also received by the Board. Sierra Club further asserts that the 45 mgd rate of water BLNR approved for A&B to divert with the 2021 RPs was not commensurate with the actual water use data submitted by A&B in its quarterly reports to the agency. The record supports and bears this out.

We agree with the Environmental Court's assessment that there were relevant and significant new conditions in the 2021 RPs and changed circumstances affecting Sierra Club's

constitutionally protected property interest as implicated in BLNR's renewal of A&B's RPs.  The RPs at issue before the Board were for 2021.  The bench trial was for the 2019 and 2020 permits.  Based on the record, as the ICA dissent noted, "[t]here was risk of erroneous deprivation even though the duration of the [RPs] was short, where the [RPs] had been continued annually for twenty years with no prior contested case hearing ever having been conducted on the constitutional interests Sierra Club sought to protect in this case."  Sierra Club I, 154 Hawai'i at 286, 550 P.3d at 252.  A contested case hearing on this new evidence and new RP conditions subsequent to the 2019 and 2020 RPs would have provided Sierra Club with a meaningful opportunity to challenge and clarify the agency's fact-finding, reasoning, and conclusions on these matters; to address pages of submitted material; and to cross-examine witnesses, thereby reducing the risk of an erroneous deprivation of its property interest.

In light of the importance of Sierra Club's asserted protected property interest, the new conditions, changed circumstances, and continuation of the RPs for over twenty years, we conclude that the prior bench trial, short duration of the RPs, and BLNR's November 13, 2020 public meeting did not provide reasonable protection from the risk of an erroneous deprivation of Sierra Club's constitutionally protected property

33

interest in a clean and healthful environment.

>    **b.    The government's interest and burdens related to a contested case hearing did not outweigh the additional protections a hearing could provide to Sierra Club.**

The third Sandy Beach factor relates to the government's interest, including the burden additional due process safeguards would involve.  A&B and BLNR argue that the ICA majority properly determined that the fiscal and administrative burden on the government would be significant, outweighing the small benefit (if any) of more procedure in the form of a contested case hearing.  The ICA further noted the potential burden on the County if a contested case hearing is not concluded before the RPs expire.  Sierra Club I, 154 Hawaiʻi at 281-83, 550 P.3d at 247-49.

The burden of a contested case hearing undoubtedly includes financial and administrative costs, which the ICA majority correctly recognized.  These burdens include written notice to parties by registered mail, the requirement that the agency make findings of fact and conclusions of law, and the right of parties to file exceptions and present argument to officials rendering the hearing's final decision.  However, we also note and agree with the ICA dissent's observation that an agency hearing officer has the power to conduct a contested case hearing in an efficient and judicious manner, appropriate to the

facts and circumstances of each case. The hearing officer retains significant control over the evidentiary proceedings with the discretion "[t]o avoid unnecessary or repetitive evidence," and the authority to limit the number of witnesses and the extent of witness examinations. HAR § 13-1-32(h) (eff. 2009). In this way, the burdens on the government can be appropriately calibrated and mitigated by the agency and hearings can be conducted efficiently and expeditiously.

Further, as HRS § 171-55 requires that BLNR articulate how the RPs' conditions and the rent charged are in the best interest of the state, the government's interest in making that determination is advanced by a contested case hearing. On this record, we conclude the burdens on the government of a contested case hearing for Sierra Club in this matter can be reasonably mitigated in a contested case hearing and do not outweigh the additional protections a contested case would provide to Sierra Club.

Therefore, we hold that the ICA majority's determination that balancing the "minimal additional protection" a contested case hearing would provide against the burden on the government weighed against Sierra Club was erroneous. On this record, a contested case hearing was required by law in the matter of BLNR's renewal of A&B's RPs for 2021.

c.   **The contested case hearing required by law needed to be held prior to BLNR's renewal of A&B's RPs for 2021.**

Once a contested case hearing is mandated, due process requires that the petitioner be afforded the hearing at a meaningful time "before governmental deprivation of a significant property interest." Sandy Beach, 70 Haw. at 378, 773 P.3d at 261.

In Mauna Kea Anaina Hou, BLNR voted to approve tentative permits for the applicant to build a telescope on Mauna Kea then directed a contested case hearing be held. 136 Hawai'i at 380, 363 P.3d at 228. BLNR subsequently held a contested case hearing on the permits. Id. On appeal, this court observed that "BLNR put the cart before the horse when it approved the permit before the contested case hearing was held. Once the permit was granted, [petitioners] were denied the most basic element of procedural due process." Id. at 391, 363 P.3d at 239.

Here, as in Mauna Kea Anaina Hou, BLNR's utilized procedure was inconsistent with the statutory definition of a contested case hearing as defined in our administrative procedure law, where a contested case is "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." HRS § 91-1.

36

We hold that constitutional due process required that Sierra Club's contested case hearing should have been held prior to BLNR's renewal of the RPs for 2021.

**B.    The Environmental Court had HRS § 91-14(g) jurisdiction over the 2021 RPs and did not err in exercising its statutory and equitable authority to modify their conditions pending remand to BLNR.**

The question of jurisdiction is a matter of law reviewed do novo.  The ICA majority held that "[t]he Environmental Court did not have [HRS § 91-14] jurisdiction over Sierra Club's appeal from BLNR's decision to continue the Permits for 2021, because that decision was not made in a contested case and did not need to be made after a contested case hearing."  Sierra Club I, 154 Hawai'i at 283, 550 P.3d at 249.  The ICA majority concluded that absent a formal contested case hearing, the Environmental Court had no jurisdiction over Sierra Club's appeal from BLNR's approval of the RPs.  Id.  We respectfully disagree.

HRS § 91-14(a) provides in relevant part that "[a]ny person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review under this chapter[.]"  As discussed above, Sierra Club's request for a contested case hearing was required by law before the Board renewed the 2021 RPs.  BLNR's decision-making

37

proceedings on the RPs did not end with the denial of Sierra Club's request for a contested case hearing, but continued with the Board voting to renew the RPs, after which there was nothing further to be accomplished.  BLNR's vote to renew A&B's RPs was the consummation of the agency's decision-making process on the RP holdovers for 2021.  See U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 268-269 (2021).  Simply put, BLNR's denial of Sierra Club's hearing request was followed by agency action that ended the proceedings.[13]

In Kilakila, this court reaffirmed that an agency's subsequent decision on a given matter in the absence of a contested case hearing required by due process constitutes a "final decision and order" from which an aggrieved party may appeal pursuant to HRS § 91-14.  131 Hawaiʻi at 203, 317 P.3d at 37.  In that case, we held that where BLNR voted to grant a permit without holding a contested case hearing requested by a party, "BLNR effectively rendered a final decision and order within the meaning of HRS 91-14," and that party had the right to appeal to the circuit court.  Id. at 196, 317 P.3d at 30.

In the instant case, BLNR's vote to renew A&B's RPs for

_____

[13]    No party on appeal to the ICA or this court has asserted the case was moot, despite the expiration of the 2021 RPs.  We note and would affirm the ICA's sua sponte analysis that mootness did not bar HRS § 91-14(g) appellate jurisdiction over Sierra Club's appeal, as both the public interest and "capable of repetition, yet evading review" exceptions applied.

2021 after denying Sierra Club's request for a contested case hearing was properly within the Environmental Court's jurisdiction on HRS § 91-14 review.  This determination is consistent with applying the four-prong test for jurisdiction to the facts of this appeal.  See Pub. Access Shoreline Hawaii v. Hawai'i Cnty. Plan. Comm'n, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995).  "'[T]here are four requirements for judicial review over an agency appeal: a contested case hearing, finality, compliance with agency rule, and standing.'"  Cmty. Ass'ns of Hualalai, Inc. v. Leeward Plan. Comm'n (Hualalai), 150 Hawai'i 241, 255, 500 P.3d 426, 440 (2021) (quoting MECO, 141 Hawai'i at 258, 408 P.3d at 10).

Here, BLNR's decision to renew A&B's RPs was made in a contested case within the meaning of HRS § 91-14, where A&B's rights, duties and privileges were determined by the Board's approval of A&B's RPs for 2021.  See Kilakila, 131 Hawai'i at 202, 317 P.3d at 27; see also, Hualalai, 150 Hawai'i at 255, 500 P.3d at 440 ("[A]bsence of a formal contested case hearing does not preclude a finding that the proceeding was a contested case.").  As to the third and fourth requirements for HRS § 91-14 appellate jurisdiction, no party disputes that Sierra Club followed BLNR's rules in properly and timely requesting a contested case hearing.  Further, the ICA opinion

recognized that Sierra Club had standing to bring an HRS § 91-14 appeal. Thus, it remains to determine if Sierra Club's appeal was taken from a final decision made by the agency.

In Hualalai, this court reiterated that a final decision or order is one that ends the proceedings, "leaving nothing further to be accomplished." 150 Hawai'i at 256, 500 P.3d at 441 (citing Gealon v. Keala, 60 Haw. 513, 520, 591 P.2d 621, 626 (1979)). As Justice Acoba correctly noted in his concurring opinion in Kilakila, "[T]his court has taken a functional approach to what can be considered a contested case hearing for purposes of judicial review, consistent with the policy of favoring judicial review of administrative actions." 131 Hawai'i at 214, 317 P.3d at 48 (Acoba, J. concurring) (internal quotation omitted). We also take a functional approach to what BLNR's final decision was in this case.

Here, BLNR wrongfully denied Sierra Club's request for a contested case hearing and then voted to renew A&B's RPs, leaving no further agency decision-making to be accomplished on that matter. The RP renewal consummated the administrative proceeding, with the contested case hearing denial a preliminary agency decision along the way to that final decision. We conclude BLNR's actions were a final decision and order from which Sierra Club had the right to appeal BLNR's decision to renew the RPs for 2021 and BLNR's denial of Sierra Club's

40

request for a hearing.  See Hualalai, 150 Hawai'i at 256, 500 P.3d at 441 ("An agency's failure to deny or grant a party's request for a contested case hearing followed by agency action that effectively ends the proceeding may also constitute a final decision.").  Therefore, we hold that the Environmental Court had HRS § 91-14(g) jurisdiction over the Board's decision to renew the RPs for 2021.

We further hold that in addition to its HRS § 91-14 authority over the RPs, the Environmental Court had equitable authority to temporarily modify the rate of water being diverted by A&B while the RP requests were pending a decision by BLNR on remand, which it appropriately and judiciously exercised in this matter.

In a HRS § 91-14 appeal of an agency decision, upon reviewing the record, a circuit court has the statutory authority to

> affirm the decision of the agency or remand the case with
> instructions for further proceedings; or it may reverse or modify
> the decision and order if the substantial rights of the
> petitioners may have been prejudiced because the administrative
> findings, conclusions, decisions, or orders are: . . . [m]ade
> upon unlawful procedure; or . . . [a]rbitrary, or capricious, or
> characterized by abuse of discretion or clearly unwarranted
> exercise of discretion.

HRS § 91-14(g)(3), (6) (emphasis added).  Further, "[w]here a court remands a matter to an agency for the purpose of conducting a contested case hearing, the court may reserve jurisdiction and appoint a master or monitor to ensure

41

compliance with its orders."  HRS § 91-14(i) (2012 & Supp. 2019).

Here, the Environmental Court was faced with RPs that had been renewed pursuant to a constitutionally unlawful procedure that had to be vacated.  At the same time, it also recognized that vacating the RPs would create a vacuum and could have unintended negative consequences on those dependent on A&B's diversion of water from East Maui's streams.

After a lengthy review of a voluminous agency record and receiving briefing and hearing oral argument from four different parties, the Environmental Court determined that Sierra Club "sufficiently demonstrated that it and its members [were] adversely affected by the continuation of the [RPs], the diversion of streams, and inadequate permit conditions."  The Environmental Court thus had authority under HRS § 91-14(g) to address BLNR's erroneous decision and to exercise its equitable powers.

In its Interim Decision, the Environmental Court ordered the 2021 RPs vacated and then stayed the effective date of that order.  In its subsequent conclusions and order, the Environmental Court noted it had asked the parties to weigh in on "whether and how the permits [could] be modified to avoid chaos" with fresh water delivery to those on Maui who relied on it.

42

The Environmental Court was cognizant of the potential for unintended consequences or chaos arising from its order vacating the invalid water RPs that were approved pursuant to an unlawful procedure. Therefore, in its August 23, 2021 decision and order, after weighing these risks and the equities, the Environmental Court temporarily modified the permits instead of vacating them in toto, thus mitigating the potential risk to the parties and the dependent communities. The Environmental Court exercised its equitable authority to temporarily modify the RPs' stream diversion rate to 25 mgd (averaged monthly) and retained HRS § 91-14(g) and (i) jurisdiction over the RPs to further modify them, if necessary or at the request of the parties, until "further order of the court, or until the contested case hearing on the permits conclude[d] and a decision or order [was] issued."

In addition to its HRS § 91-14(g) powers to review an agency's decision, HRS § 604A-2(b) provides in relevant part:

> In any case in which it has jurisdiction, the environmental courts shall exercise general equity powers as authorized by law. Nothing in this chapter shall be construed to limit the jurisdiction and authority of any judge, designated as judge of an environmental court, to matters within the scope of this chapter.

Further, circuit courts are empowered to "make and issue all orders and writs necessary or appropriate in aid of their original or appellate jurisdiction," as well as to

43

> make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

HRS § 603-21.9(1), (6) (2016).

In <u>Fleming v. Napili Kai, Ltd.</u>, this court noted that equity jurisprudence "is not bound by the strict rules of the common law, but can mold its decrees to do justice amid all the vicissitudes and intricacies of life.  The principles upon which it proceeds are eternal; but their application in a changing world will necessarily change to meet changed situations."  50 Haw. 66, 70; 430 P.2d 316, 319 (1967) (citations and quotations omitted).

In the present case, the invalid water diversion RPs raised exceptionally fraught risks if they were suddenly vacated. Recognizing that A&B's delivery of fresh water to Central Maui served numerous essential needs, the Environmental Court assessed the RPs' importance, weighed the risks, and molded its decree in such form as to conserve the equities of the parties and protect the interests of the community.

We hold that the Environmental Court did not err.  The court properly exercised its statutory and equitable authority pursuant to HRS § 91-14(g), (i); HRS § 604A-2(b); and HRS § 603-21.9.

**C.    Sierra Club was entitled to attorney fees and costs under the private attorney general doctrine.**

The ICA majority vacated the Environmental Court's award of attorney fees and costs on the premise that Sierra Club was not entitled to a contested case hearing and that the Environmental Court did not have jurisdiction over Sierra Club's appeal from BLNR's decision to continue the RPs.  Given our prior discussion, we reverse the ICA majority's decision on this issue.

Pursuant to the "American Rule," each party must pay their own litigation expenses; but this rule is subject to a number of exceptions when authorized by statute, rule of court, agreement, stipulation, or precedent.  In re Water Use Permit Applications, 96 Hawai'i 27, 29, 25 P.3d 802, 804 (Waiāhole II) (2001).

This court recognizes the equitable rule of the private attorney general doctrine as the basis for a party's recovery of attorney fees under certain circumstances.  Sierra Club v. Dep't of Transp., 120 Hawai'i 181, 218, 202 P.3d 1226, 1263 (2009) (Superferry II).  Specifically, we apply three basic factors in considering such an award: (1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiffs, and (3) the number of people standing to benefit from the decision.  Id.

"Although a plaintiff may not sustain his entire claim, if judgment is rendered for him, he is the prevailing party for purposes of costs and [attorney] fees." Id. at 215, 202 P.3d at 1260 (cleaned up). The Environmental Court held that the BLNR wrongly denied Sierra Club's contested case petition. It then vacated the 2021 RPs, and upon stay, modified the maximum rate of diversion from 45 mgd to 25 mgd.

On this record, we find that Sierra Club has met all three factors of the private attorney general doctrine and affirm the Environmental Court's reasoning. Sierra Club's appeal vindicated important public policies, including defense of a due process right to a contested case hearing before BLNR's renewal of A&B's "temporary" RPs to divert fresh water from East Maui streams. Private enforcement of these policies was essential, as no other party sought to test BLNR's reasoning behind setting a 45 mgd cap on water diversion and the change in the agency's definition of water waste. And Sierra Club's advocacy on their members' behalf could benefit the public generally, for example, in assessing potential water waste and vindicating procedural rights.

We conclude that the Environmental Court did not abuse its discretion in awarding attorney fees and costs to Sierra Club. We reverse the ICA's vacating of the Environmental Court's two fee orders.

## V. Conclusion

Accordingly, we reverse in relevant part the ICA's May 13, 2024 Judgment on Appeal.  And we affirm the Environmental Court's May 28, 2021 Interim Decision on Appeal; July 30, 2021 Order Modifying Permits; August 23, 2021 Findings of Fact, Conclusions of Law and Order; December 27, 2021 supplemental order extending the end date for the Permits; and February 2, 2022 and July 12, 2022 orders awarding Sierra Club attorney fees and costs.

David Kimo Frankel
for petitioner Sierra Club

Julie H. China and
Melissa D. Goldman for
respondent Board of Land
and Natural Resources

Calvert G. Chipchase,
Christopher T. Goodin and
Trisha H.S.T. Akagi for
respondents Alexander &
Baldwin, Inc. and East Maui
Irrigation Co., LLC

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Vladimir P. Devens

/s/ Clarissa Y. Malinao

